JAMES FALLOON v. GEORGE A. CLARK, *as Secretary of State*.

No. 11,595. (58 Pac. 990.)

JUDGE OF THE DISTRICT COURT—*Removal from Office*. A judge of the district court cannot be removed from office on other grounds, or by other methods, than those prescribed by the constitution, namely, by impeachment for misdemeanor in office or by joint resolution of both houses of the legislature, two-thirds of the members of each house concurring, as prescribed by section 15 of article 3.

Original proceeding in mandamus. Opinion filed November 11, 1899. Writ denied.

*Clemens & Meily*, for plaintiff.

*A. A. Godard*, attorney-general, for defendant.

The opinion of the court was delivered by

JOHNSTON, J. : This is a proceeding to compel George A. Clark, as secretary of state, to file a certificate of the nomination of James Falloon to the office of judge of the district court, alleged to have become vacant by reason of the action of the state senate.

At the general election held in 1898, William I. Stuart and James Falloon were candidates for judge of the twenty-second judicial district, and upon a canvass of the votes Stuart was declared to have been elected, and in due time he qualified and entered upon the discharge of his duties as judge. An attempt was made by Falloon to contest the election of Stuart before the state senate at the special session of the legislature begun on December 21, 1898, but there was an adjournment of that session before a hearing was had. The regular session of the legislature began on January 10, 1899, and shortly afterward Falloon re-

filed his notice of contest, and on January 19 the matter of contest came before the senate, but a hearing was postponed from time to time until near the end of the session, when the following resolution was adopted :

"*Resolved*, That when the senate adjourns *sine die* as a legislative body it shall be to meet on Tuesday, the 21st day of March, 1899, at four o'clock P. M., for the purpose of trying the contest case of Falloon against Stuart."

At the date named in the resolution a meeting of the senate was held, and the hearing of the contest was proceeded with, but the contestee objected to the jurisdiction of the senate, and contended throughout that it had no authority to try and determine the contest.    At the conclusion of the hearing the senate did not determine that the contestor had been elected or was entitled to the office, but, instead, the following resolution, introduced by Senator Jumper, was adopted :

"*Resolved*, That it is the sense of this senate that the office of judge of the twenty-second judicial district of the state of Kansas be declared vacant."

What is designated as a journal entry was subsequently prepared and adopted, and is as follows :

" The senate of the state of Kansas, sitting as a contest court in the above-entitled case, after hearing the evidence and argument of counsel and being fully advised in the premises, find that the contestee, William I. Stuart, did, during the campaign preceding the election of judge of the twenty-second judicial district of the state of Kansas, held on the 8th day of November, 1898, and on said election day, violate the provisions of chapter 77 of the Session Laws of 1893, 'An act to prohibit the corrupt use of money and corrupt practices at elections,' for the purpose of in-

fluencing voters to vote for him, the said William I.
Stuart, for said office.

"Wherefore, this senate, sitting as a contest court
as aforesaid, finds that the said William I. Stuart, by
his acts, has rendered himself ineligible to hold said
office, and has violated the laws of the state of Kansas
relating to corrupt practices at elections as aforesaid,
and we find that said office, for the reason stated
above, is vacant.

"Therefore, it is ordered and adjudged by the
senate of the state of Kansas, sitting as a contest
court as aforesaid, that the office of judge of the
twenty-second judicial district of the state of Kansas
be, and the same is, hereby declared vacant, and that
the said William I. Stuart be, and he is hereby,
ordered and directed to vacate the same.

"March 30, 1899."

Stuart continued in possession of the office, and
after Falloon presented his nomination papers to the
secretary of state he objected to the filing or consid-
eration of the same, and thereupon the objection was
considered by the secretary of state, the auditor of
state, and the attorney-general. After the hearing of
evidence and the arguments of counsel in behalf of
both parties, it was determined that there was no
vacancy in the office of judge of the twenty-second
judicial district to be filled at the general election in
1899, and that the secretary of state ought not to
certify the nomination to the county clerks of the
several counties of the district. Immediately after
that determination the present proceeding was begun,
in which we are asked to determine whether the ac-
tion of the senate effectively removed Stuart from his
office and made a vacancy to be filled at the election
of this year.

The questions as to the sufficiency of the notice of
contest and as to whether the senate was duly author-

ized to sit as a contest court when the hearing was had may be passed over, as the determination of them is not essential to a decision of the case.

Assuming, but not deciding, that there was jurisdiction in the senate, we must hold that the final proceedings had and the judgment rendered were wholly unauthorized and absolutely invalid. What was begun as a statutory contest to decide which one of the two candidates was elected as judge was converted into a proceeding to vacate the office and remove an elected judge from office. The issues which the contestor raised were left undetermined, and the senate, assuming that Stuart had received a majority of the votes cast and was in fact the judge of the district, undertook to remove him from office for wrongs alleged to have been done before he became judge. It did not adjudge that he was guilty of any specific wrong-doing, but it decided and declared that he had violated the provisions of chapter 77 of the Laws of 1893 (Gen. Stat. 1897, ch. 56; Gen. Stat. 1899, §§ 2666–2680), an act which defines many distinct offenses and prescribes punishment therefor. Section 12 of that act provides:

"Any person elected to any office who shall be proven in a contest of such election, or in any other manner provided by law, to have violated any provision of this act shall forfeit his office and said office shall be declared vacant," etc.

The plaintiff contends that this provision justified the judgment of removal that was rendered; but it can have no application to judges of the district courts, who are only removable in the manner prescribed by the constitution. Two methods of removal are there prescribed — one by impeachment, and the other by joint resolution of both houses of the legislature. Un-

der section 28 of article 2, judges of the district court are subject to impeachment and removal for "any misdemeanor in office," and section 23 of the same article provides that such cases shall be tried by the senate sitting as a court of impeachment, but that no person shall be convicted without the concurrence of two-thirds of the senators elected; and, of course, there can be no trial until the house of representatives, which has the sole power to impeach, presents articles of impeachment. The other method is provided for in section 15 of article 3 of the constitution, and is as follows:

"Justices of the supreme court and judges of the district courts may be removed from office by resolution of both houses, if two-thirds of the members of each house concur; but no such removal shall be made except upon complaint, the substance of which shall be entered upon the journal, nor until the party charged shall have had notice and opportunity to be heard."

This provision is somewhat akin to the method known in England and in some of the states as removal by address, and furnishes a more summary and sweeping remedy than that afforded by impeachment. The only ground of removal by impeachment is "misdemeanor in office," and these words we think are used in a parliamentary sense, and mean misconduct in office. It is something which amounts to a breach of the conditions tacitly annexed to the office, and includes any wrongful official act or omission to perform an official duty. This would not include offenses committed, or wrongful acts done, before the judge entered upon his office, nor many cases of physical, mental or moral inability which would render the judge unfit to occupy the position. The provision authorizing removal by joint resolution of the legislature is

broad and general in its terms, and, as will be seen, contains no express limitation as to the grounds for which removal may be had. The proceedings of the constitutional convention at the time this section was adopted throw some light on the purpose of those who framed it. Mr. Slough, who was contending that the subject of removal was covered by the provision for impeachment, moved to strike this section out, and stated:

" It was provided for yesterday in the article on the legislative department.

" Mr. McDowell: I do n't think it is provided for.

" Mr. Thacher: It amounts to the same thing with the exception that the carrying into execution must be by a two-third vote of the senate. I think the section should be stricken out.

" Mr. Kingman: I understand a man can be impeached only for high crimes or misdemeanors; and if we have a person thrust upon us in this position who is not qualified shall we have to bear with that affliction for six years?

" Mr. Slough: It seems to me that in the section adopted yesterday large power was given to the legislature to impeach.

" Mr. Burris: The word 'impeachment' and the term 'removal from office' are not synonymous. 'Impeachment' carries with it removal from office, but removal does not carry with it the idea of impeachment. If a case should arise where the judge is removed and no charge brought against him and sustained, it would be proper that this section should be retained; but believing it is impossible — barely, perhaps — that it might be proper to remove a justice from office and yet the charge of impeachment not be sustained against him before the legislature, I shall vote against striking that section out.

" Mr. J. Blood: I am opposed to striking out. Every lawyer is aware it is almost impossible to impeach a judge — while all admit cases do occur where it is desirable that he should be removed.

"The motion to strike out was lost." ( Proceedings and Debates of the Kansas Constitutional Convention, p. 74.)

Whether the method provided in section 15 may be employed to remove a judge from office for official misconduct such as is impeachable we need not now inquire, nor is it necessary to consider how far the action of the legislature under this provision — which is judicial in its nature — is reviewable by the courts. It is clear, however, that the two methods of removal, namely, by impeachment and by joint resolution, cover every case and include every ground for which a judge may be removed from office.

The constitution having prescribed the grounds for which a judge may be removed and the manner in which it may be done, is it competent for the legislature to provide that he may be removed for other reasons and in another manner?  This question was before the supreme court of Kentucky, where it was held :

"Wherever the constitution has created an office and fixed its terms, and has also declared upon what grounds and in what mode an incumbent of such office may be removed before the expiration of his term, it is beyond the power of the legislature to remove such officer or suspend him from office for any other reason or in any other mode than the constitution itself has furnished." (*Lowe v. Commonwealth*, 3 Metc. [Ky.] 237.) In Throop on Public Officers, sec. 341, it is said to be "well settled that where the constitution creates or recognizes an office, and declares that the incumbent may be removed in a specified manner or for specified reasons, the legislature cannot constitutionally provide by statute for his removal for any other reason or in any other manner." See, also, *State v. Wiltz*, 11 La. Ann. 439 ; *The State, ex rel. Robinson, District Attorney, and Edmondson v. McNeely*, 24 La. Ann. 19 ; *Brown &c. v. Grover, Administrator, &c.*, 6

Bush (Ky.) 1; *Page, Second Auditor, v. Hardin,* 8 Mon. (B.) (Ky.) 648; Mechem, Pub. Off. § 457.

It must be conceded that in the absence of constitutional provision or limitation the legislature would have complete power and discretion to provide by statute for the removal of public officers; but where the constitution plainly prescribes the grounds and methods of removal it must be regarded as the paramount law, and not subject to be directly or indirectly changed or nullified by legislative enactment.

To remove by impeachment there must be a concurrence of two-thirds of the senators elected, and a removal by joint resolution requires a concurrence and vote of two-thirds of the members of each house; and would it be contended that a judge might be removed from office by a majority vote of a single branch of the legislature? The framers of the constitution made ample provision in section 15 for the removal of judges deemed unworthy and unfit for the positions they hold, but at the same time the judiciary is protected from legislative caprice or political prejudice and stability is given to the tenure of office by the guaranties in the provision that there can be no removal until there is a written complaint setting forth the grounds of removal, the substance of which shall be entered on the legislative journals, nor until the party charged shall have had notice and an opportunity to be heard; and then there must be the concurrent action of both houses of the legislature, with two-thirds of the members of each house voting in favor of removal. These constitutional provisions cannot be nullified nor the guaranties taken away by legislative action. A violation of the provisions of chapter 77 of the Laws of 1893 (Gen. Stat. 1897, ch. 56; Gen. Stat. 1899, §§ 2666–2680) by a judge immediately preced-

ing his election to office would, probably, afford ground for removal under section 15 of article 3 of the constitution, but such removal can only be had in accordance with the methods prescribed in the constitution itself.

It must be held, therefore, that the act of the senate did not operate to create a vacancy or to remove the judge from his office. The peremptory writ will be denied.