THE STATE OF KANSAS, ex rel. JOHN S. DAWSON, as Attorney-general, etc., *Plaintiff,* v. RALPH MARTIN, as Sheriff, etc., *Defendant.*

No. 17,728.

SYLLABUS BY THE COURT.

1. OUSTER—*Suspension from Office Pendente Lite.* The title "An act providing for the removal of unfaithful public officers and providing a procedure therefor," is broad enough to cover a provision for the suspension of an officer prior to the final hearing in an action for his removal, and provisions imposing upon various officials new duties intended to aid in procuring the removal of officers guilty of misconduct.

2. ——— *Statute Valid—Constitutional Law.* Assuming that

52—87 KAN.

an act providing a method for the removal for misconduct of all state, district, county, township and city officers (excepting judges of the supreme and district courts and members of the legislature) is inoperative as to the incumbents of state offices created by the constitution, because they can be removed only by impeachment, this consideration does not affect the validity of the act as to other officers.

3. ——— *Sheriff—Duty Under Prohibitory Law.* Compliance by the sheriff with the statute requiring him to give information to the county attorney respecting violations of the prohibitory law is not excused by the fact that no action has been taken upon similar information previously given.

Original proceeding in quo warranto. Opinion filed October 12, 1912. Judgment of ouster.

*John S. Dawson,* attorney-general, *S. N. Hawkes,* assistant attorney-general, *S. M. Brewster,* special assistant attorney-general, for the plaintiff; *Keplinger & Trickett,* of Kansas City, of counsel.

*H. W. Currey,* of Webb City, Mo., and *Ferry, Doran & Dean,* of Topeka, *Edward M. Tracewell, William J. Moore, Andrew H. Skidmore,* and *Stephen L. Walker,* all of Columbus, for the defendant.

The opinion of the court was delivered by

MASON, J.: The attorney-general brought this action against the defendant to oust him from his office as sheriff of Cherokee county, on account of the willful neglect of duties enjoined upon him by law. Upon a preliminary hearing the defendant was suspended. A motion was made to set aside the order of suspension on the ground that the statute under which the action was brought (Laws 1911, ch. 237) is unconstitutional. This motion was overruled, a memorandum opinion being filed in which it was said that the grounds of the holding would be stated upon the final decision. (*The State, ex rel., v. Martin,* 85 Kan. 879, 118 Pac. 1119.)

The objections made to the validity of the act are that its subject is not clearly expressed in the title (Const.

art. 2, § 16) ; and that so much of it as relates to removing the incumbents of offices created by the constitution is ineffective because the constitutional provision for their removal by impeachment is exclusive, and that this forms such an essential part of the legislation that its invalidity makes the whole enactment void.

The title is "An act providing for the removal of unfaithful public officers and providing a procedure therefor." The body of the act contains a provision that in a proceeding for the removal of an officer he may be temporarily suspended pending the final decision, but only upon notice and hearing and a finding of good cause therefor. An order of suspension under such circumstances is a part of the procedure of removal and need not be separately mentioned in the title. New powers are given to various officials by other portions of the act, but as their ultimate purpose is to procure the removal of unfaithful officers, they are sufficiently covered by the title selected.

The act purports to provide for the removal, upon proof of misconduct, of all state, district, county, township or city officers, excepting justices of the supreme court, district judges and members of the legislature. The constitution provides that the incumbent of a state office created by that instrument may be removed by impeachment. (Const. art. 2, § 28.) It seems probable that the legislature can not provide for the removal of such an officer in any other manner. (*Falloon v. Clark,* 61 Kan. 121, 58 Pac. 990.) But assuming this portion of the act to be void, the validity of the remainder is not impaired. Considered as having relation only to those officers who are amenable to such regulation, the act is complete and unobjectionable, no part of it being dependent upon the provisions in relation to those who are immune. The legislature has expressed its purpose that all state, district, county, township and city officers (excepting judges of the su-

preme and districts courts and members of the legislature) should be removable by civil action. As to a certain class of state officers this turns out to be beyond its power. Clearly the desire to have these particular officers made subject to removal was not an inducement for the legislation as to the others. The legislature could in its pleasure '(save for the section of the constitution referred to) have made the act applicable to any class or classes of officers. It did not need to include the county officers in order to reach the state officers. The situation is wholly different from that presented in such cases as *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540, 565. There one section of an act penalized certain conduct on the part of any person. Another section provided that certain classes of persons were exempt from its provisions. The section granting the exemption was held void on the ground that it resulted in a denial of the equal protection of the laws. The entire act was declared invalid because if enforced without the obnoxious section it would have produced a result not contemplated or desired by the legislature—the punishment of persons whom the lawmakers did not wish to be punished.

Because the grounds of the ruling were not more fully stated at the time the motion to set aside the order of suspension was decided, a petition for a rehearing of that matter has been allowed to remain pending without action. It is now overruled, but in a petition for rehearing on the merits the defendant may present any of the questions involved.

The charges made against the defendant are substantially these:

1. That he knew of an effort to prevent the enforcement of the prohibitory law by raising a fund for the bribery of public officers, and took no steps to prevent its success.

2. That he executed a warrant which commanded him to seize all the intoxicating liquor to be found at

a certain place, by taking only a small part thereof, his return showing a seizure of all that was found.

3. That he connived at an arrangement by which persons committed to jail for the violation of the prohibitory law were allowed to provide substitutes to serve out their sentences.

4. That he negligently allowed a considerable portion of a quantity of liquor which he had seized under a warrant to be disposed of while being transported to the county seat.

5. That knowing that the prohibitory law was being violated in the county he failed to furnish the county attorney with the facts concerning such violations.

Evidence has been taken by a commissioner, who has reported his findings of fact in detail and recommended a judgment for the plaintiff. The findings have been examined in connection with the record of the testimony, and are approved. With respect to the charges here numbered 1, 2, 3 and 4 the findings are in favor of the defendant. It is found that one of his deputies attempted to bribe an officer; that upon learning of this the defendant discharged the offender and informed an assistant attorney-general of the affair, but took no further steps towards instituting a prosecution. This does not sustain the second charge, and affords no ground for his removal. No separate finding was made as to the charge numbered 3, but it was found generally that the defendant did not aid or contribute to the effectiveness of any corrupt practices. As to the 4th charge the finding is that the liquor referred to was taken without the defendant's knowledge; that when he learned of it he informed the county attorney, but took no steps for the punishment of the person guilty of the offense. This can not be regarded as willful misconduct on the part of the defendant.

The case must therefore rest upon the 5th charge—that of failure to give information to the county attorney. Among other findings on the subject the com-

missioner made these, which are supported by the evidence, and are sufficient to warrant a judgment of ouster:

"That during the time the said defendant was sheriff of Cherokee county, Kansas, and for a long time prior thereto, joints and saloons existed in said county, where intoxicating liquors were sold and bartered contrary to law and where people were permitted to resort for the purpose of drinking intoxicating liquors as a beverage contrary to law; that many of these places had fixed places of business where they had been operated for a considerable length of time; that no effort at concealment was made; that persons entered and purchased liquors without hindrance or question; that said liquors were dispensed over bars, and the ordinary fixtures used in keeping and maintaining saloons were used in said places.

"That during the time said defendant was sheriff of said Cherokee county there was maintained therein at Weir City, Scammon and Mineral wholesale houses for the sale of beer and other liquors unlawfully in said county; that from these places it was a common sight to see beer and other liquors hauled in the daytime on drays and wagons to the various joints and saloons of the town and vicinity.

"That defendant while sheriff knew generally of the existence of joints and saloons in said Cherokee county and had information other than that given by him to the county attorney in reference to the violation of the prohibitory liquor law in said county."

The fact that the prohibitory law was continuously, persistently and openly violated is not disputed. That the condition stated in the first two findings quoted could exist without the knowledge of a reasonably diligent sheriff is hardly to be seriously contended. However, there was direct evidence, from the knowledge the defendant displayed with reference to a number of warrants issued at the instance of an assistant attorney-general, that he knew the location and proprietorship of many of the places where liquors were unlawfully sold. He is shown to have frequently said to the county attorney that the prohibitory law

The State, *ex rel.*, v. Martin.

ought to be enforced, and to have reported the names of a few violators, but this was the extent of his activity in that direction. He asserts that the county attorney promised to investigate the matters reported, but failed to take any action. He appears to have been willing to perform faithfully any official service that devolved upon him from the action of another officer, but not to take the initiative himself in an effort to secure the enforcement of the law. The statute makes it the duty of a sheriff who has notice or knowledge of any violations of the prohibitory law "to notify the county attorney of the fact of such violation, and to furnish him the names of any witnesses within his knowledge by whom such violation can be proven." (Gen. Stat. 1909, § 4368.) The fact that the county attorney failed to follow up the slight information officially reported to him, or that he may have already possessed substantially as much knowledge as the sheriff, did not relieve the defendant from compliance with the statute. The language used in *The State v. Bowden*, 80 Kan. 49, 101 Pac. 654, is applicable:

"The primary purpose of this provision is to put the county attorney in command of evidence whereby the law may be vindicated. The presumption is that he will do his duty. Sometimes, however, the county attorney displays masterly inactivity in the enforcement of the liquor law, and then the diligent and faithful making of reports to him by the officers named may either compel him to act or furnish grounds for his removal.

"The law was framed to accomplish results. Its letter and spirit are unmistakable to any one who carefully studies it. When the defendant took office he bound himself to fulfil both. . . . He did nothing except to talk with the county attorney in a general way about the subject of liquor prosecutions by the city. This is not what the statute requires. The notification must be given in such a manner that the county attorney may understand it is an official communication, and in such terms that he will be put in possession

of the specific information which it is designed to convey." (p. 55.)

Under the statute (Laws 1911, ch. 237, § 1) the willful neglect of an officer to perform a duty enjoined by law works a forfeiture of his office. The defendant was familiar with the statute defining his duties with reference to the enforcement of the prohibitory law, and his failure to observe it must be regarded as willful within the meaning of the act. He is cleared of the charges of dereliction in the service of process, and of connivance at corruption, but for his omission to take affirmative, active steps in aid of the enforcement of the prohibitory law judgment of ouster is rendered against him.