No. 23,533.

GEORGE W. REED, Jr., *Appellee,* v. HIRAM C. ROOT, *Appellant.*

SYLLABUS BY THE COURT.

CONTRACT—*Services as Attorney at Law—Contract Interpreted.* As against a demurrer to the evidence it is held that in view of the attendant circumstances the provision of a written contract that an attorney should receive for his services in representing the owner of mortgaged real estate in an action to foreclose the mortgage "one-half of all received out of said lots and lands involved" is open to the construction that he was to receive half of the rents collected up to the time of the execution of a sheriff's deed.

Appeal from Shawnee district court, division No. 1; JAMES A. McCLURE, judge. Opinion filed February 11, 1922. Reversed.

*W. R. Hazen,* and *Hiram C. Root,* both of Topeka, for the appellant.
*Oscar Raines,* and *A. E. Crane,* both of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: Geo. W. Reed, jr., owned real estate mortgaged for some $6,000. Action was brought by the owner of the mortgage to foreclose it. On October 30, 1918, Reed employed Hiram C. Root as his attorney to represent him in the matter, and a memorandum of their agreement was signed by both. For a while Reed was out of the state and Root looked after the property, collecting the rents, which were divided equally between them. In October, 1919, Reed having returned, a settlement was made on this basis up to that time. Thereafter Reed collected and retained the rents. Root still made claim to half of the rent money and on July 12, 1920, Reed brought an action to set aside the written contract already referred to on the ground that his signature had been obtained by misrepresentation of its contents. Root filed an answer denying any misrepresentation and asking judgment in accordance with his claim for half the rent. The cause of action set up in the petition was tried first and the

written contract was held to be valid, the judgment rendered including an interpretation of a part of its language. The defendant's claim for rent was not passed upon at this hearing but was specifically reserved for a jury trial, which was thereafter held, being presided over by a different judge. It resulted in the sustaining of a demurrer to the evidence of the claimant—the defendant. This appeal is taken from that ruling. The judgment interpreting and upholding the written contract is not challenged. The foreclosure action finally resulted in a judgment sustaining the mortgage and ordering a sale of the property.

The defendant on the trial of his claim offered oral testimony concerning the original agreement between the parties and the circumstances attending the writing of the memorandum, which was rejected as an attempt to vary by parol the terms of a written contract. Complaint is made of this ruling, but it cannot be reviewed for want of any showing as to what the witnesses would have said if they had been permitted to testify. (Gen. Stat. 1915, § 7209.) The question to be determined, therefore, is this: Did the written contract, as interpreted by the judgment of the court on the earlier hearing, either alone or in connection with such evidence of the defendant as was introduced, show *prima facie* an agreement that he was to receive for his services as attorney in the foreclosure case one-half of the rent of the property up to the time of the execution of a sheriff's deed?

The written contract contained provisions relating to another matter than the foreclosure suit which do not affect the present controversy in any way, and for that reason all further reference to them will be omitted. With this omission the contract read as follows, the clause in brackets having been inserted some time after its execution:

"It is hereby stipulated by and between George W. Reed, Jr., and Hiram C. Root, an attorney at law, that Hiram C. Root will handle the case of *Bank of Topeka v. Volk Mfg. Co. George W. Reed, Jr., et al.,* in the courts . . . if the suit . . . is carried on to completion by Hiram C. Root as attorney for Geo. W. Reed, Jr., then said Hiram C. Root is to receive one half of all received out of said lots and lands involved in said suit . . . [said fee for the half of said property is not to exceed two thousand ($2000.00) dollars.] Dated this 30th day of October, 1918."

The defendant undertakes to explain in this way the insertion of the bracketed clause: Originally it had been assumed that the effect

of Root's services in the foreclosure action would be to prevent the appointment of a receiver, and see that the steps for the enforcement of the mortgage were regularly taken to the end that the period during which Reed would enjoy the rent should not be unduly shortened; but Root shortly concluded that under the statute of limitations it might be possible to defeat the mortgage altogether, and the clause in question was inserted in recognition of the fact that in that case one-half of the property would be too large a fee. Evidence of an understanding to that effect was not produced, perhaps by reason of the ruling of the court already referred to. However, we think the explanation offered is consistent with the language of the memorandum. The provision that Root was "to receive one half of all received out of said lots and lands involved in said suit" seems to point to a division of the rent as clearly as to any other definite basis of compensation.

In deciding the issue concerning the validity and effect of the written contract, the decision being based upon the pleadings, statements in open court and evidence of the defendant, the court found that "shortly after the execution of said contract, it was orally agreed by the parties that if defendant failed to defeat the mortgage involved in the pending litigation he was not to receive for his services therefor any compensation, and the payment of said sum of two thousand dollars referred to in the written contract for defendant's services was contingent upon the defeat of said mortgage." This supports the defendant's interpretation of the contract provided the word "therefor" is construed as meaning "for trying to defeat the mortgage." That such was the sense in which the word was used is indicated by this language, which was incorporated in the judgment: "It is ordered and adjudged . . . that it was orally agreed by the parties shortly after the execution of the contract that if the defendant failed to defeat the mortgage involved in the foreclosure suit, he was not to receive any compensation for his services rendered in the attempt to defeat the same, but that the sum of two thousand dollars mentioned in the written contract was contingent upon the defeat of the said mortgage." We think this judgment determines that the agreement that the defendant's compensation was to be contingent upon the defeat of the mortgage had reference solely to his services in attempting to defeat the mortgage, and not to his services in resisting the appointment of a receiver and taking other steps to prolong Reed's possession of the property and

Rule v. Eagle Township.

enjoyment of its income. The defendant testified that he was successful in preventing the appointment of a receiver, and in securing a period of redemption; that a little after the settlement in October, 1919 (which was after judgment had been rendered in the foreclosure case, but while an appeal therefrom was pending), Reed made no objection to paying him half of the rent, beyond saying he was so short of tax money that he could not pay him anything then, but would make it up later. The amount received as rent was not in dispute.

We think that in view of the circumstances under which the written agreement was made, so far as they are developed, it is open to the construction put upon it by the defendant—that (in case the mortgage was not defeated) he was to receive half of the rents of the property so long as it remained in the possession of Reed, a construction which derives some support from the evidence that Reed, in effect, excused himself from further payment after the settlement of October, 1919, on the ground of needing the money for other purposes, and promised to make it up later. For this reason we hold that the demurrer to the defendant's evidence should have been overruled. We do not decide that the memorandum was so free from ambiguity that further evidence might not have been received to throw light upon its meaning.

The judgment is reversed and the cause remanded for further proceedings.