No. 23,914.

THE STATE OF KANSAS, ex rel. RICHARD J. HOPKINS, as Attorney-general, *Appellee,* v. THOMAS RAYL, *Appellant.*

SYLLABUS BY THE COURT.

1. OUSTER—*County Commissioner—Proceedings on Appeal.* An appeal from a judgment in proceedings to oust an officer under the provisions of chapter 237, Laws of 1911 (Gen. Stat. 1915, §§ 7603-7618), is tried in this court like any other appeal. A different procedure obtains where original proceedings are brought in this court. In that situation, a commissioner is usually appointed by the supreme court to make findings of fact and of law, but the court must determine the facts and the law, aided by the findings of the commissioner.

2. SAME—*Appeal from District Court—Evidence—Findings—Judgment.* On appeal from a judgment of ouster under chapter 237, Laws of 1911 (Gen. Stat. 1915, §§ 7603-7618), to remove a county commissioner from office it is held that certain findings of the district court are sustained by sufficient evidence, and compel an affirmance of the judgment.

Appeal from Reno district court; JESSE D. WALL, judge. Opinion filed February 11, 1922. Affirmed.

*C. M. Williams,* and *D. C. Martindell,* both of Hutchinson, for the appellant.

*Richard J. Hopkins,* attorney-general, *C. B. Griffith,* assistant attorney-general, and *William H. Burnett,* county attorney, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This action was brought under the provisions of chapter 237, Laws of 1911 (Gen. Stat. 1915, §§ 7603-7618), to remove the defendant, Thomas Rayl, from the office of county commissioner of Reno county. The presiding judge being disqualified,

the Honorable Jesse D. Wall, judge of the third division of the district court of Sedgwick county was agreed upon to try the case. The court made findings of fact and conclusions of law and rendered judgment of ouster against the defendant.

The following are, in substance, the findings of fact:

1. Thomas Rayl was elected county commissioner of Reno county at the general election of 1920. In the early part of January, 1921, certain tubercular cattle in Reno county had been condemned. The commissioners and the county clerk considered the question whether it was the duty of the entire membership of the board to inspect and appraise the cattle, and section 11084 of the General Statutes of 1915, making it the duty of the live-stock commissioner, in conjunction with the chairman of the board of county commissioners, and the owner of the condemned animals to make the appraisement, was read to the commissioners. It was decided that as there was no express prohibition in the statute against all of them acting, they would all take part in the inspection. On January 6, 7 and 8 the three commissioners, in company with the deputy state live-stock inspector, traveled 91½ miles in Reno county inspecting this lot of cattle. The defendant filed a claim against the county for mileage of 325 miles covering this trip. The voucher was approved by the commissioners and paid to him. His contention that he did not keep track of the mileage and did not know what the correct amount was, is not supported by the evidence. In February, 1921, the defendant, in connection with the other members of the board, traveled 38 miles in inspecting another lot of tubercular cattle, and swore to and filed a claim against the county for 89 miles, and the defendant, with the other county commissioners, approved and allowed his claim for $8.90.

2. On or about February 1, 1921, the defendant, as a member of the board, approved and permitted to be paid without objection claims against the county of Commissioner Ragland in the sum of $32.50, and of Commissioner R. A. Elward in the sum of $32 for mileage on the inspection trip of January 6, 7 and 8, in which each traveled but 91½ miles.

3. On or about March 1, 1921, the defendant approved and consented to the payment, without objection, of warrants to his fellow county commissioners in the sum of $8.90 upon vouchers claiming mileage for 89 miles, when in fact each of the claimants had actually traveled but 38 miles. The defendant approved the vouchers

and the issuance of warrants to the commissioners with the same knowledge as to the conditions respecting the legality of payment of any mileage whatsoever, and with the same knowledge concerning the distance actually traveled by them as in the first transaction referred to.

4. About April 1, 1921, he approved and consented to the payment of warrants to Commissioner Elward and Commissioner Ragland each in the sum of $4.40 upon a voucher claiming mileage for the inspection of tubercular cattle when the mileage actually traveled by them was 15 instead of 44 miles, and at the time of the approval by the defendant of that claim he knew that Commissioners Elward and Ragland had been drawing excess and illegal mileage. He failed at this time to put in a claim for $1.50 mileage for himself, in an attempt to pay back some of the excess mileage he had collected from the county in the other transactions. The $1.50 represented mileage he would have been entitled to charge in making this trip, if entitled to any mileage at all for the inspection of tubercular cattle. At this time he knew of the contention that none of the commissioners, except the chairman, was entitled to mileage for inspecting tubercular cattle, but he made no objection to the allowance of the claims to his fellow members, and although he knew at the time that only 15 miles had been traveled by them.

5. Sometime in the month of June, 1921, the three members of the board made a trip to Kansas City, Mo., for the purpose of witnessing the slaughter of certain tubercular cattle which had been condemned by local veterinarians and shipped to a packing company there. The defendant then knew that there was a contention that he was not entitled to any mileage in connection with tubercular cattle. The three commissioners spent one forenoon at Kansas City, Mo., and witnessed the slaughter of part of the carload of cattle. The trip from Hutchinson to Kansas City and return, and spending an entire day there, which was a half day more than was actually spent in the business, should have consumed only two days, or rather two nights and a day. The defendant presented a claim against the county, and in connection with Commissioners Ragland and Elward approved the claim for payment to himself for 480 miles mileage at 10 cents a mile and $5 a day *per diem* for three days. He also approved warrants drawn to the other commissioners for like mileage and per diem. Whether the

defendant and his fellow commissioners were entitled to charge any mileage for this trip, each charged and collected $5 excessive *per diem* fees.

6. In 1920, D. E. Gilmer was county engineer of Reno county. About May or June of that year Charles Ragland, chairman of the county board, purchased a new Ford automobile and used it for about three months and then sold it to Gilmer; on January 4, 1921, Gilmer sold this secondhand automobile to Reno county for $550 and presented a claim against the county for that amount, in which it was recited that the first cost of the car was $726, and that a depreciation of three months at $58.66 per month, amounting to $176, was deducted, leaving the sum of $550 as the net price to the county. The automobile instead of having been used three months had been used six months. At the time Gilmer sold it to Reno county a new Ford car of the same kind could have been bought in Hutchinson for $604. The defendant, knowing these facts, consented to and approved the purchase, and without objection permitted the issuance of a warrant to Gilmer of $550 for the purchase of the car.

7. In February, 1921, Gilmer, the county engineer, had been suspected of having unlawfully converted to his own use certain road supplies belonging to the county. Shortly thereafter he was called before the state highway commissioner at Topeka, was arrested, and later charged and convicted of embezzlement and sentenced to the penitentiary. Shortly before he was called to Topeka the defendant advised him to leave the county within twenty-four hours to save himself trouble and to save other persons trouble and expense. The defendant was conversant with some of the charges which had been made against the engineer; knew he was about to be arrested, but in spite of this, failed to notify or inform the proper officers as to his knowledge of the misconduct of Gilmer.

8. Early in the year 1921, Rayl made a proposition to Gilmer, the county engineer, that they buy and establish a gravel pit of about 10 acres on some land belonging to a Mr. Swarens. His proposition was that the property should be held by a partnership to consist of Commissioner Ragland, chairman of the board, D. E. Gilmer, county engineer, and himself, and that the title to the land be taken in the name of his son, who was to be employed to operate the pit. Under this proposition the price of gravel was to

be raised from $1.25 per cubic yard to $2 per cubic yard and sold to the county for road work. The defendant made this proposition with full knowledge that it was an arrangement which, if consummated, would result in violation of the law and in reckless disregard of his duty as county commissioner.

As conclusions of law the court held:

*First:* That the defendant, through willful and fraudulent representations and verifications of vouchers for mileage not actually traveled in the inspection of tubercular cattle, and through his collection from the county therefor, has forfeited his right to hold the office of county commissioner.

*Second:* The defendant, through his willful and corrupt approval of warrants to Commissioners Ragland and Elward for mileage not actually traveled by them in the discharge of their official duties, has forfeited his right to his office.

*Third:* The defendant, by reason of having collected excess *per diem* allowance upon vouchers which were incorrect and untrue, and by having approved county warrants to Commissioners Ragland and Elward for *per diem* in excess of the sums to which they were entitled on a trip to Kansas City, Mo., in relation to the slaughter of tubercular cattle, has forfeited his right to the office.

*Fourth:* The defendant, by reason of his approval of the purchase of a secondhand Ford automobile from D. E. Gilmer, and by reason of his participation in the allowance and approval of the warrant for $550 therefor, willfully and maliciously abused his authority in his official capacity as county commissioner.

*Fifth:* The defendant, in advising County Engineer Gilmer to leave the state at a time when Gilmer was about to be arrested for malfeasance in office, was guilty of a willful violation of and failure and neglect to perform the duties enjoined upon him by law as a county commissioner.

*Sixth:* Defendant's action in proposing to the county engineer that the defendant, the county engineer, and the chairman of the board should enter into a partnership to buy a gravel pit, and for some other person secretly to hold the title thereto for the benefit of the partnership, and to reap the profits therefrom by the sale of gravel to Reno county, was in willful disregard and in direct violation of the duties enjoined upon him by law, and that a judgment of ouster should be entered against him.

Counsel for the appellant labors under a misapprehension as to

the procedure in cases of this kind on appeal. In the brief it is insisted that in ouster proceedings this court retries the case on appeal and passes upon questions of fact as well as questions of law. And it is urged that the court must come to the conclusion that the testimony is insufficient to find defendant guilty of willful misconduct in office.

On appeal the case is tried like any other appeal from a judgment of the district court. A different procedure obtains where original proceedings of ouster are brought in this court, and where a commissioner is appointed by the court to act for it. The court itself must determine the facts, aided by the findings of the commissioner. That course was pursued in the case of *The State, ex rel., v. Wilson*, 108 Kan. 641, 196 Pac. 758.

In *The State v. Lyons*, 97 Kan. 588, 155 Pac. 936, which was an action to oust the defendant from office as a member of the board of county commissioners of Wyandotte county, judgment was rendered in his favor, and the state appealed. It was held that because there was sufficient evidence in the abstracts to sustain the material portions of each finding, the judgment must be affirmed.

The assignment of errors here amounts merely to a claim that the various findings are not sustained by sufficient evidence. The principal argument is that defendant honestly believed that he and the other commissioners were justified in participating in the inspection of the tubercular cattle and that it was not unlawful for the board to make the trip to Kansas City. The trial court gave the defendant the benefit of any doubt with respect to both these questions, but naturally, we think, laid some stress upon the fact that in each inspection of tubercular cattle the mileage charged was from two and one-half to three times the actual distance traveled. As to the Kansas City trip the court held that the defendant had willfully charged for one day's more service than he had rendered. It is said, however, that the charge with reference to the defendant's proposition to the county engineer to buy a tract of land upon which there was located a gravel pit and raise the price of gravel to the county was not alleged in the petition. It was doubtless the state's intention to amend the petition so as to include this charge. But if that finding of the court be stricken out there still remains sufficient evidence which, in our opinion, justifies the judgment of ouster. The same thing is true with respect to the findings that the defendant advised the county engi-

neer to leave the county to save himself and others trouble and expense when he knew there were charges against the engineer.

We discover no reason for reversing the judgment, and it is affirmed.