No. 25,589.

THE STATE OF KANSAS, ex rel. CHARLES B. GRIFFITH, Attorney-general, *Plaintiff*, v. TOM HURLEY, Marshal of the City Court of Topeka, Shawnee County, *Defendant.*

SYLLABUS BY THE COURT.

QUO WARRANTO—*Ouster of Officer—Voluntary Drunkenness in Public Place—Charge Not Sustained.* In an action to remove an officer because of voluntary drunkenness in a public place the evidence is held not to prove the charge.

Original proceedings in quo warranto. Opinion filed June 7, 1924. Judgment for defendant.

. *C. B. Griffith,* attorney-general, and *Donald W. Stewart,* assistant attorney-general, for the plaintiff; *J. E. Addington,* of Topeka, of counsel.

*John J. Schenck, Z. T. Hazen, J. B. Larimer,* and *W. Glenn Hamilton,* all of Topeka, for the defendant.

The opinion of the court was delivered by

MASON, J.: The state, on the relation of the attorney-general, brings this action to oust the defendant from his office as marshal of the court of Topeka on the ground that during his term as such officer he has been drunk in a public place, has had intoxicating liquor in his possession, has furnished it to another, and has failed to notify the county attorney of the violations of the prohibitory law included in the preceding charges or implied thereby. The case is submitted upon depositions on each side.

The statute authorizes the ouster of any public officer "who shall in any public place . . . be in a state of intoxication produced by strong drink voluntarily taken." (R. S. 60-1609.) Some of the evidence tends to show the defendant to have been drunk in a public place while he was marshal, but prior to the beginning of his present official term. This is not material to the issues presented, because he cannot be removed on account of misconduct during a previous term. (*The State, ex rel., v. Henschel,* 103 Kan. 511, 175 Pac. 393.) Some of the evidence tends to show that during his present term he was drunk in a private house. This is likewise immaterial, because such conduct is not expressly declared a cause of removal under the statute cited, nor is it made a misdemeanor by the crimes act (R. S. 21-2128), unless others are thereby disturbed. There is evidence on both sides of the question whether the defendant during his present

term of office, which began in January, 1923, has been drunk in a public place. This conflict the court is required to solve according to its judgment of the probabilities from the reading of the record, without the advantage of having seen the witnesses while giving their testimony. To show the problem that is presented it is necessary to attempt a statement of the substance of the evidence at some length.

The principal witness for the state testified positively that about ten o'clock—some time before noon—of October 5, 1923, in the marshal's office, the defendant was intoxicated, although he did not notice any sign of liquor on his breath, and that he was also intoxicated the day before in the same place. This witness was a deputy of the defendant at the time referred to. He afterwards talked with the governor and with the attorney-general about the matter. Later,. on January 1, 1924, the witness was discharged as deputy, and after that he looked up evidence for the plaintiff in this case. He told the defendant that the cause of his own discharge would result in the defendant's discharge, meaning by this "that he got my job and that I would get his"; he talked to a representative of the governor about being appointed deputy in case the defendant was ousted. This witness was obviously interested—a matter entitled to consideration in weighing his testimony.

A second witness for the state testified that he saw the defendant on the morning of October 4 or 5, 1923, in the sheriff's office; that he saw nothing unusual in his manner; that he was not a judge of whether a man was drunk or sober; that he had previously made an affidavit (which to this extent was true) that on this occasion the defendant's tone of voice made him think he was not in a normal condition and rather gave him the impression that he might be under the influence of intoxicating liquor—at any rate he was not his natural self; that he did not know whether the defendant was drunk or not—that he didn't act natural. The answers of this witness seem evasive, showing an apparent unwillingness to testify against the defendant.

A third witness for the state, a police patrolman, testified that he deposited his pay check on the morning of Ocober 5, 1923, between nine and ten o'clock; that he saw the defendant at the bank; that he didn't know he was intoxicated but thought he had been drinking—he thought he could smell liquor on his breath and he was noisy and boisterous, whereas he generally seemed quiet; that

the defendant's conduct was such that if the witness had been on duty he would have told him to go home—would have tried to get him home if he had been peaceable.

A fourth witness for the state was the elevator man at the courthouse. He testified that he had seen the defendant on the elevator twice when he thought he was under the influence of liquor about a month before November 27, 1923; that he smelled liquor on him, and his actions were more hilarious, jovial and boisterous than usual. On cross-examination he said he had talked to another person "and told him that I have never seen Mr. Hurley when he would stagger or anything of that kind. I have seen him when I thought he was drinking. He was not what I would consider drunk."

A fifth witness for the state testified that in May, 1923, in his store, the defendant was very much intoxicated. The defendant's purpose in coming to the store was to serve an execution. A controversy arose over it, as a result of which the witness was arrested for interfering with an officer and was convicted on that charge. His altercation with the defendant and his attitude toward him go far to nullify his testimony.

A sixth witness for the state testified that in October, 1923, the defendant took him to his house and gave him something to drink—ginger ale mixed with something white—which he just tasted, and which he would not say was intoxicating, for he did not drink enough to tell; that in an affidavit before the attorney-general the witness, being asked if it was intoxicating, said he would take it to be; that the defendant was under the influence of intoxicating liquor while he was with him, but wasn't drunk; that he thought what the defendant had been drinking was intoxicating; that in reply to a remark of the witness that he did not think there was much whisky in the town the defendant responded, "An officer can find it most any place."

For the defense the county attorney testified that he had seen the defendant practically every working day for seven or eight years and had never seen him under the influence of intoxicating liquor; that he had always thought him an efficient officer. The deputy county attorney testified that October 5, 1923, was criminal day in the court of Topeka; that he thought the defendant was present in court on that day—thought he had talked with him concerning a case about 9:30 in the morning; that he frequently saw him, and never saw him under the influence of liquor. The proprietor of a tire

shop testified that he gave the defendant a check in the forenoon of October 5, 1923, talking with him quite a little while, and did not smell any liquor; that nothing about him led him to think he had been drinking. The bank cashier who cashed the check on the same day testified to the same effect, as did the assistant cashier, who identified the defendant to the cashier and conversed with him and "kidded back and forth a little" with him. Another bank cashier saw the defendant at his bank on the same day between nine o'clock and noon, was sitting quite close to him, and smelled no intoxicating liquor and saw nothing to indicate he was intoxicated. The clerk and deputy clerk of the court of Topeka saw the defendant on the same day and testified that neither then nor at any other time did either of them observe anything to lead to the belief that he was under the influence of intoxicating liquor. A witness who gave another check to the defendant about ten o'clock on the morning of October 5, 1923, testified that he smelled no liquor and observed nothing to indicate that he was intoxicated or had been drinking. Six other witnesses who were well acquainted with the defendant and saw him frequently testified that they had never seen anything to indicate that he had been drinking.

The defendant as a witness in his own behalf denied the drinking and the drunkenness attributed to him. He said with respect to the testimony concerning the occurrence at his house, that he showed his guest a bottle of denatured alcohol which he used as a liniment, and said, "That is some of the real stuff," and may have said in a jocular way that he could get it because he was an officer.

The testimony of the witnesses for the defendant is abundant to establish that drunkenness is not habitual with him. Such proof, however, is not necessarily inconsistent with occasional instances of intoxication. The fact, which is well established, that a number of persons who did business with him on October 5, some of them at about the time he is accused of being drunk, tends to discredit the truthfulness of the state's witnesses or the accuracy of their observation. There is no reason to doubt the veracity of any of the witnesses for the defendant whose testimony has been set out, and there is no apparent ground, outside of the conflict noted, for attributing bad faith to some of the witnesses for the state whose evidence, if accepted, is sufficient to make a case against him.

The only question that needs to be determined is whether the removal of the defendant is warranted on the ground of his having

Duckworth v. Board of Compensation.

been drunk in a public place, for in no other respect is a stronger case made out against him. Although the consequences to the defendant if judgment is rendered against him are severe, the action is not a criminal one and the plaintiff is not required to prove its case beyond a reasonable doubt. It is the decision of the court that there is no preponderance of the evidence in support of the charge of public drunkenness, and judgment is therefore rendered in favor of the defendant.