No. 42,710

STATE OF KANSAS, ex rel. WARREN RALSTON, County Attorney of Butler County, Kansas, *Appellee,* v. JACK M. BLAIN, *Appellant.*

(370 P. 2d 415)

Opinion filed April 7, 1962.

*R. A. Munroe* and *Fred R. Vieux,* both of Augusta, argued the cause and *Franklin D. Gaines,* of Augusta, was with them on the briefs for the appellant.

*Warren Ralston,* county attorney, argued the cause and *William M. Ferguson,* attorney general, and *Ervin E. Grant,* assistant county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: The present appeal is a companion case to *State, ex rel., v. Showalter,* this day decided, Kan. 562, 370 P. 2d 408. The two cases were filed at the same time and were proceedings brought by the county attorney of Butler county to oust from office two members of the board of county commissioners of Butler county. The proceedings were filed under G. S. 1949, 60-1609 to 60-1624.

The petition in the Blain case charged two counts or causes of action. In the first cause, it was alleged that on May 5, and May 6, 1961, and on numerous other occasions defendant had engaged in gambling and games of chance at a certain filling station in El Dorado.

In the second cause of action, the petition charged that defendant had on January 31, 1961, drunk and consumed alcoholic liquor at a certain named beer tavern in El Dorado to which the general public had access.

The prayer was that defendant be declared to have forfeited his public office and that it be declared vacant.

Defendant was served with a summons in the proceeding which gave the day of July 10, 1961, as the answer day and warned that if no answer was made on or before said day, judgment would be taken as prayed for in the petition.

On July 1, 1961, the judge pro tempore notified counsel that he would be in El Dorado on the morning of July 6, 1961, to take up matters relating to the setting and hearing of these ouster cases.

On July 6, counsel for Blain, without having filed any answer in the case, argued to the court that it would be necessary to have a continuance in the case before trial and urged upon the court the necessity of obtaining witnesses. He also said that counsel was very busy with other business.

The court insisted that the cases be set for July 24, 1961, and that the Blain case would be tried first, followed by the Showalter case. But defendant Blain filed no answer and the 10th day of July was allowed to pass without an answer being filed. On July 11, 1961, the county attorney filed in this case a motion for judgment setting out the default of the defendant in failing to file an answer or otherwise plead.

On July 12, 1961, defendant Blain filed a motion in which he prayed for permission to plead out of time, and further attached to the motion a demurrer to the petition and secondly an answer consisting of a general denial.

On July 15, 1961, the court took up the motions in the case then on file. Defendant Blain made a strong argument for the allowance of his motion for permission to plead out of time. However, the court, after due consideration, found that the motion of the defendant to plead out of time should be overruled and the motion by the plaintiff for judgment should be sustained.

Thereafter defendant filed motions to vacate the judgment and

also a motion for new trial both of which were overruled, and defendant Blain appeals to this court. It may be noted that as part of the proceeding on the motion for new trial, was an offer of proof that the charges in the petition were untrue.

In the brief in this court, appellant Blain has attempted to argue the case under seven separate heads or questions, but the court feels appellant is over meticulous. At the moment we see some three questions in the case, and will discuss them as we come to them.

Appellant raises the question that he, as a county commissioner, is a constitutional officer and may be removed only by impeachment. We pass the question suggested by appellee that the question was not raised in the trial court and cannot be raised here. At least, it is a question of law and not a question of fact.

It is true that county commissioners have at least been mentioned in the state constitution since statehood, and that they are now provided for in article 4, section 2.

In what may have been the first case under the ouster statute after its passage in 1911, we find this constitutional question concerning impeachment discussed. In *State, ex rel., v. Martin,* 87 Kan. 817, 126 Pac. 1080, which was brought by the then attorney general John S. Dawson against a sheriff—and we assume the sheriff raised something about the question of impeachment. Sheriffs are mentioned also in the state constitution. But the court held that the remedy of impeachment lay only against a state constitutional officer. The court said in part:

"The act purports to provide for the removal, upon proof of misconduct, of all state, district, county, township or city officers, excepting justices of the supreme court, district judges and members of the legislature. The constitution provides that the incumbent of a state office created by that instrument may be removed by impeachment. (Const. art. 2, § 28.) It seems probable that the legislature cannot provide for the removal of such an officer in any other manner. (*Falloon v. Clark,* 61 Kan. 121, 58 Pac. 990.) But assuming this portion of the act to be void, the validity of the remainder is not impaired. Considered as having relation only to those officers who are amenable to such regulation, the act is complete and unobjectionable, no part of it being dependent upon the provisions in relation to those who are immune. The legislature has expressed its purpose that all state, district, county, township and city officers (excepting judges of the supreme and district courts and members of the legislature) should be removable by civil action. As to a certain class of state officers this turns out to be beyond its power. Clearly the desire to have these particular officers made subject to removal was not an inducement for the legislation as to the others. The legislature could in its pleasure (save

for the section of the constitution referred to) have made the act applicable to any class or classes of officers. It did not need to include the county officers in order to reach the state officers."

The above rule seems to be the law of this state, and we might observe that we have never heard of a county officer in any state being impeached by the legislature. A reading of the cases annotated under the ouster statute will show that many county officers have been prosecuted under the statute, including commissioners, sheriffs and justices of the peace.

Appellant argues with much force that the statutory action herein involved is one which requires evidence before even a default judgment may be rendered. But on further study of the statute and the cases thereunder, we have come to the opposite conclusion.

There can be no question that the action provided for is a civil action and not a criminal action. What the statute creates is, of course, a rather summary form of the action of quo warranto. It will be noted that many early cases found in the annotations under the statute were filed originally with this court under our original jurisdiction provision as cases in the nature of quo warranto.

Not only is the action one of civil nature, but proof need be only by a preponderance of evidence. See the following three cases which involved different degrees of proof: *State, ex rel., v. Rayl,* 110 Kan. 516, 204 Pac. 1002; Rehearing denied, 111 Kan. 571, 207 Pac. 759; *State v. Hurley,* 116 Kan. 395, 226 Pac. 709; and *State, ex rel., v. King,* 126 Kan. 683, 271 Pac. 274.

All that can be said is that the court has treated the cases in general as civil actions. What is the rule about default judgments in civil actions? Is evidence necessary? At common law if defendant did not answer, the plaintiff was entitled to a judgment by default as to the defendant being responsible to him, but he must obtain a writ of inquiry to assess the amount of damages. See the old case of *Raymond v. Danbury & Norwalk R. R. Co.,* 43 Conn. 596, 14 Blatchford 133, 20 Fed. Cas. 332, Scott & Simpson Civil Procedure 800.

Section 60-748, G. S. 1949, is quite like the common law but more lenient. "Every material allegation of the petition not controverted by the answer . . . shall for the purposes of the action be taken as true; . . . Allegations of value, or of amount of damages, shall not be considered as true by failure to controvert them; but this shall not apply to the amount claimed in actions on

contract, express or implied, for the recovery of money only." And see G. S. 1949, 60-3109.

Thus a default in a civil case goes even to the amount of damages as to a suit on contract. This was not true under common law. But there is no doubt that under our practice as under common law the defendant has suffered a judgment against him except that the exact amount of damages, if any, may have to await evidence. Defendant is foreclosed as to showing non-liability. See the Raymond case *supra.*

But there are no damages in this quo warranto case to be assessed. The plaintiff is entitled to judgment. This court in a quite similar action has so held. *State, ex rel., v. Swift & Co.,* 127 Kan. 817, 275 Pac. 176, was a suit by the county attorney to enjoin a public nuisance in a street. The court said:

"The general rule is that where plaintiff's petition states a cause of action and defendant's demurrer thereto has been overruled, and defendant fails or refuses to plead further, the court is authorized to render judgment by default. (34 C. J. 167.) Our statute (R. S. 60-748) provides that the material allegations of a petition, not controverted by answer, 'shall for the purposes of the action be taken as true,' although the court may, with the assent of the party not in default, take evidence. (R. S. 60-3109.)

In the matter now under consideration, we see no difference between an order issued in an injunction suit and an order in a suit in the nature of quo warranto.

The final argument made is that it was an abuse of discretion upon the part of the trial court to refuse to allow the motion to plead out of time, and not to allow the answer attached to the motion as an exhibit to be filed. If the demurrer had not also been included in the exhibit, the learned trial court might have been more lenient, we would suspect. But the whole statute is designed to constitute a summary suit; to avoid waste of time, and the demurrer was clearly inappropriate in view of the provisions of section 60-1614. Furthermore, the learned judge pro tempore, on his first visit to El Dorado on July 6, had been met with delaying tactics in both this case and in the Showalter case. He warned counsel that the cases were set for trial on July 24. And yet, no answer was filed within proper time.

This court has always hesitated to overrule the best judgment of the trial court in such cases. In the old case of *Bane v. Cox,* 75 Kan. 184, 88 Pac. 1083, this court in an extreme case did find an

abuse of discretion but in the opinion laid down a warning to litigants that will bear repetition. The court said:

"It is the duty of litigants to exercise great diligence both in prosecuting and in defending actions in court, and, as there are usually many cases set for hearing at each term of the district courts, the orderly dispatch of the business and the protection of other litigants from expensive delays and accumulating costs make it the duty of the court strictly to require the parties to every action to be ready for trial promptly at the time the case is set for hearing or to prove that in the exercise of due diligence they have been unable to do so. So great is the necessity for the prompt dispatch of court business that the statute authorizes courts to and they generally do impose upon the unfortunate litigant who, even through no fault of his own, is unprepared to proceed at the time set all the costs of the necessary delay. This is usually sufficient to insure the making of every reasonable effort to be ready at the time appointed, unless vexation and delay be the real object of the litigation or unless some real or fancied advantage may accrue to one party by a course of procrastination. In such cases of designed obstruction or in case of gross or reckless inaction, if the fault be on the part of the plaintiff, it may become the duty of the court to dismiss his action; if the defendant be at fault he may be penalized by proceeding with the trial notwithstanding his unreadiness."

In view of the situation in the case at bar, the court is unable to find an abuse of discretion in this case. Other cases might be cited, see for example *City of Wichita v. Houchens,* 184 Kan. 297, 335 P. 2d 1117; *Becker v. Roothe,* 184 Kan. 830, 339 P. 2d 292; *Desch v. Carnutt,* 186 Kan. 238, 349 P. 2d 941, and authorities cited.

All questions raised in appellant's brief have been fully considered, but require no further comment.

The order of the court will be to affirm the judgment appealed from and it is so ordered.