THE STATE OF KANSAS, *on the relation of S. B. Bradford, Attorney General,* v. T. A. SCATES.

COUNTY BOARD, *Not Liable to Charge of Corruption.* Where a board of county commissioners, upon the advice of able and competent attorneys at law, allows certain claims which are not strictly legal charges against the county, its official action in so doing will not render the commissioners liable to the charge of corruption, or forfeiture of office, if the allowances were honestly made and the board acted merely upon a mistake or error of law as to the liability of the county.

*Original Proceeding in Quo Warranto.*

THIS is an original proceeding in *quo warranto,* brought February 15, 1888, by *The State of Kansas,* upon the relation of the attorney general, against *T. A. Scates,* to remove him from the office of county commissioner of Seward county. His term of office commenced in January, 1887, and will expire in January, 1890. The petition states as grounds for removal, first, that Scates and Kimball, being a majority of the county board, at the April session, 1887—

"Unlawfully, corruptly, and with intent to defraud the tax-payers of Seward county, 'allowed a claim presented in the name of T. N. Sedgwick, and purporting to be for $488 traveling exenses and $1,500 for attorney-fees, which claim was illegal and unjust. Sedgwick never filed said claim. A county warrant was issued for $1,988, the full amount of said claim,

and paid out of county funds. Sedgwick received only $475, and the balance, of $1,513, was corruptly converted by Scates to his own use.'

"*Second:* That in February, 1887, Scates and Kimball, having disobeyed an order of the district court, were fined for contempt, and in default of payment were imprisoned by order of said court in the jail of Barber county. They applied to this court to be discharged upon *habeas corpus*, and were remanded. Afterward, 'well knowing that the county of Seward was not liable for the payment of said fines and costs, nor for attorney-fees in making their defense before the judge of the district court, nor for attorney-fees in the *habeas corpus* proceedings in this court, said Scates and Kimball, in April, 1887, allowed and voted to said Scates the sum of $234.41' as and for his expenses and *per diem* while under arrest and in jail, and while attending the supreme court on the *habeas corpus* proceedings, for which sum a county warrant was issued, and signed by said Scates.

"*Third:* That at said meeting in April, 1887, said Scates and Kimball 'unlawfully and corruptly' allowed a claim in favor of one J. L. Wells, amounting to $90, for traveling expenses in the matter of the *habeas corpus* proceedings already mentioned.

"*Fourth:* That at the April session, 1887, of the county board, Scates and Kimball as a majority of said board allowed one H. C. Finch the sum of $701.25 for services 'as the attorney of said Scates and Kimball' in attending to their private business in said contempts and *habeas corpus* proceedings.

"*Fifth:* At said April meeting, 1887, Scates and Kimball, 'in pursuance of their unlawful and corrupt conspiracy,' allowed said Kimball the sum of $254.11 'as and for his expenses and *per diem*' while in custody and in jail respecting said contempt proceedings, and while attending the supreme court in said *habeas corpus* proceedings.

"*Sixth:* At said meeting in April, 1887, Scates and Kimball, as county commissioners, unlawfully and corruptly allowed and voted to one J. W. Hixon the sum of $433.29 as and for the fines and costs imposed on them in the *mandamus* proceedings aforesaid.

"*Seventh:* In July, 1887, Scates and Kimball as county commissioners unlawfully and corruptly allowed to said Scates the sum of $82.39 as 'traveling expenses on trip to Newton, Emporia and Topeka, to consult attorneys concerning decision of supreme court in *habeas corpus* proceedings.' This exhibit

G contains three items—one as above, under date of 14th April, for $82.39, and one, under date of 8th May, for $22.19 for 'traveling expenses to Newton to consult attorneys in injunction case.'

"*Eighth:* At the July session of the board of commissioners Scates and Kimball unlawfully and corruptly allowed as a claim against Seward county a bill in favor of Brown and Simpson, amounting to $425, 'for legal services rendered for said Scates and Kimball in their private affairs in the *habeas corpus* proceedings aforesaid in the supreme court.'

"*Ninth:* In July, 1887, said Scates and Kimball as county commissioners corruptly made an allowance of $50 to one H. D. Merritt 'for services as deputy county attorney,' said 'claim not being one for which Seward county was liable.'

"*Tenth:* In October, 1887, said Scates and Kimball as such commissioners unlawfully and corruptly allowed $813 to one Theo. Botkin, an attorney at law, 'there being nothing then due to said Botkin for anything whatever.'

"*Eleventh:* Scates and Kimball as commissioners, and Oliver Leisure as county clerk, unlawfully and corruptly issued and caused and procured to be issued a county warrant in favor of one G. S. Stein for the sum of $5,100, which warrant was signed by said Scates as chairman, and by said Leisure as county clerk. No bill, claim or account was ever presented to the county board by said Stein, nor filed for said claim. Said warrant was issued dated July 30, 1887, and was paid by the treasurer of Seward county on 23d November, 1887, and said warrant was issued for the purpose and with the intent to defraud Seward county.

"*Twelfth:* At the January session, 1888, of the county board said Scates and Kimball, constituting a majority of said board, unlawfully and corruptly allowed to one H. D. Merritt $190 on account of matters 'in no wise legal claims against Seward county.'

"*Thirteenth:* At said January session, 1888, Scates and Kimball as county commissioners 'unlawfully and corruptly' allowed Theo. Botkin, attorney at law, the further sum of $303 for pretended services, whereas the supposed services were not rendered for or on behalf of Seward county.

"*Fourteenth:* In July, 1887, Scates and Kimball, as county commissioners entered into a conspiracy with one Adkison, for the issuance to Adkison bonds of Seward county, 'to take up and fund outstanding orders of said county; whereas at that time Seward county had no bonded debt of any kind, and

said Scates and Kimball as commissioners, and said Leisure as county clerk, corruptly issued and sold to Adkison bonds of said county in the sum of $40,000, without any vote of the electors, and without any authority of law; and at that time the total indebtedness of the county was only $33,730, so that in any event, even if said bonds were applied in payment of actual indebtedness, there was still an excess of $6,270 corruptly issued, without any consideration whatever."

The defendant filed his answer on April 6, 1888, admitting that he was a member of the board of county commissioners of Seward county, as alleged in the petition. And for further answer he denied generally and specifically all the other allegations and statements contained in the petition. J. H. Stuart, Esq., was appointed a commissioner to take and report the testimony. His report embraces 308 pages of type-writing. The case was orally argued and submitted to the court upon briefs, at its May sitting for 1889.

*L. B. Kellogg,* attorney general, *W. C. Webb, Webb, Campbell & Spencer, George W. Collins,* and *Samuel N. Wood,* for plaintiff.

*Joseph Wisby,* and *J. D. McFarland,* for defendant.

The opinion of the court was delivered by

HORTON, C. J.: Seward county was organized in 1886. In the fall of 1886 T. A. Scates, W. W. Kimball and E. A. Watson were elected county commissioners, and Oliver Leisure county clerk. The term of each began in January, 1887, and it was during the spring and summer of 1887 that the matters complained of in these proceedings occurred. The object of the action is to remove Scates from office, for alleged misconduct under § 180 of chapter 25, Comp. Laws of 1885, p. 300, which reads:

"If any board of county commissioners, or any commissioner, or any other county officer, shall neglect or refuse to perform any act which it is his duty to perform, or shall corruptly or oppressively perform any such duty, he shall forfeit his office, and shall be removed therefrom by civil action in the manner provided in the code of civil procedure."

The petition alleges that the acts complained of were done "corruptly, and with the intent to defraud the tax-payers of Seward county." This case has been under advisement for several months. All the members of the court have carefully examined and fully considered the testimony. The differences among the members of the court as to the judgment which should be rendered, have been the cause of the delay in filing this opinion.

In regard to the claim presented against Seward county in the name of T. N. Sedgwick, for $1,500 as attorney-fees and $488 for traveling expenses, the majority of the court think that the testimony does not show that the charge is illegal.

The alleged retention or conversion of $1,513 of the claim or county warrants issued to pay the same by Scates, rests almost wholly upon the testimony of A. B. Carr. The majority of the court do not believe him worthy of credit, and therefore are unwilling to accept his testimony as truthful. If his evidence is rejected, or if it is held that it is sufficiently denied by the evidence of the other witnesses, there is not any testimony showing or tending to show that Scates acted dishonestly or corruptly in allowing the Sedgwick claim, or that he in any way realized any personal benefit or advantage therefrom. The writer of this thinks from the testimony that there was a corrupt agreement between Carr, Scates and G. S. Stein which resulted in the presentation of the Sedgwick claim for $1,988, and that only $475 of this went to Sedgwick, the balance being for the benefit of Scates, Carr, and Stein.

Concerning the other charges alleged in the petition, the majority of the court are of the opinion that while many of the allowances made by Scates as a member of the board of county commissioners of Seward county were extravagant, and several of them not strictly legal, yet that the testimony does not disclose any corrupt or intentional wrong upon his part in voting to allow these claims, or in issuing county warrants therefor. The majority of the court do not think that the testimony shows or tends to show that Scates obtained any personal ad-

County commissioner, not liable to charge of corruption.

vantage or benefit from the allowance of any of these claims. In support of the good faith of Scates, it is also urged by the majority of the court, that all of these claims were allowed upon the advice of able and competent attorneys. With these conclusions, however, I do not concur. As the majority of the court do not find that any of the acts complained of were done by Scates corruptly, or with the intent to defraud the tax-payers of Seward county, judgment will be rendered in his favor and against the plaintiff.

It seems unnecessary to recite or comment upon the testimony presented upon the hearing. It is very voluminous and contradictory. If the important parts were incorporated in the opinion it would cover many pages.

The defendant will recover his costs.

VALENTINE, J.: I do not concur in the foregoing opinion of the Chief Justice, although I think I can say I concur in the judgment recommended. During the year 1887, T. A. Scates, W. W. Kimball and Edwin A. Watson constituted the board of county commissioners of Seward county, and during that time, and principally in April, 1887, they allowed a number of claims against the county of Seward, for which the defendant, Scates, is now prosecuted in this action. Some of such claims, as I think, were unreasonable, indeed unconscionable; and some of them, or at least portions of the amounts allowed, were illegal. In my opinion the Sedgwick claim spoken of was unreasonable, both in the amount claimed and in the amount allowed. Seward-county warrants, or in other words, Seward-county scrip, was at that time worth only about seventy cents on the dollar, and the county board generally allowed an amount on each claim, and issued scrip therefor, which if sold at its market value would bring the amount in cash of the original claim. In one instance, and one of the earliest, if not the earliest, where the claim was about $2,877, the board allowed the sum of $4,106.09, and issued scrip for the last-named amount, the difference between the two amounts being over one thousand dollars; and if the

members of the board had been prosecuted under § 3 of the act to restrain the issuing of county warrants, and found guilty, they would, and should, in my opinion, all have been removed from office. (Comp. Laws of 1885, p. 301, paragraph 1699.) Said § 3 also applies to county clerks. Oliver Leisure was the county clerk. His case has been disposed of. (*The State, ex rel., v. Leisure,* 42 Kas. 272; same case, 21 Pac. Rep. 1070.) But not one of the guilty parties, the county commissioners or the county clerk, has ever been prosecuted under said § 3. Scates is now prosecuted under § 180 of the act relating to counties and county officers. (Comp. Laws of 1885, p. 300, paragraph 1694.) That section provides that a county officer may be removed from office for a *neglect* or *refusal* to perform his official duties, or for *corruptly* or *oppressively* performing the same, and does not provide for any removal from office for any other cause. Now there is no pretense under the facts of this case that Scates so *neglected* or *refused* to perform the duties of his office, or so *oppressively* performed them, that he could be removed from office for any such reasons; but the only claim made as against him is that he so *corruptly* performed the duties of his office that he may be removed therefrom. It is not claimed that he can be removed from his office because he united with the other members of the board, or either of them, in allowing *unreasonable* claims or *illegal* claims, unless it can also be said that in the allowance thereof he acted *corruptly.* In my opinion, as above stated, every member of the board might have been removed from office by a prosecution under § 3 of the act to restrain the issuing of county warrants, for the reason that they allowed amounts on the claims presented to them greater than the actual amounts of the claims themselves, and for issuing county warrants or county scrip which included these increased amounts; yet all the members of this court agree that no one of them could be removed from office under § 180 of the act relating to counties and county officers, for allowing such excess, unless he received some portion of the excess himself, or unless he received a bribe of some kind for mak-

ing such excessive allowance.   My opinion, however, is, that if any member of the board united with the other members or either of them in allowing to himself an excessive amount on his own claim, and received the same, he might be prosecuted and removed from office under § 180 of the act relating to counties and county officers, as well as under § 3 of the act 'to restrain the issuing of county warrants.   But the Chief Justice says that no instance of an excessive amount being allowed and received by a commissioner is shown by the evidence introduced in this case, and I think this statement is correct. Therefore the defendant Scates cannot be removed from office in this case unless actual and absolute *corruption* is shown against him; and it seems virtually to be admitted that no corruption is shown against him unless it is shown by the testimony of A. B. Carr.   Now, in my opinion, in the light of all the evidence in the case, the testimony of Carr is wholly unworthy of credit, and in its material statements it is not only against a large preponderance of the evidence, but it is also absolutely untrue.   Also, the county board seems in all cases, in the allowance of doubtful claims and the claims now complained of, and especially in the allowance of excessive amounts on such claims, to have acted under the advice of legal counsel and others, and under the advice of counsel for both sides in the local difficulties then existing in that county. I think the plaintiff has utterly failed in its proof as to all the allegations of its petition charging fraud or corruption as against the defendant.   While he acted mistakenly in several instances under the bad advice of counsel and others, yet, from the evidence in the case, I do not think that it sufficiently appears that he acted corruptly.

For the reasons above stated, I concur in the judgment.

JOHNSTON, J.: While I cannot assent to all that is said in the foregoing opinions, I concur in the judgment.

*Per Curiam:* Upon the authority of *The State, ex rel., v. Scates,* just decided, judgment in THE STATE, *ex rel.,* v. W.

22—43 KAS.

W. KIMBALL, No. 5050, will be rendered for the defendant, and against the plaintiff. The defendant will also recover all his costs.