No. 24,746.

THE STATE OF KANSAS, *Appellee,* v. JOHN WELLMAN, *Appellant.*

SYLLABUS BY THE COURT.

1. LIQUOR LAW—*Maintaining a Nuisance—Matters To Be Considered in Determining Validity of Preliminary Examination.* The validity of a preliminary examination and whether defendant has been sufficiently advised as to the charge upon which he is to be tried, depends not only upon the testimony adduced at such examination, but, also upon the information disclosed by the complaint and warrant, and all other matters of procedure before the magistrate of which the defendant has notice.

2. SAME—*Evidence Sustains Verdict.* The evidence examined and found to have been sufficient to warrant its submission to the jury and to sustain a verdict based thereon.

3. SAME—*Instructions Must Be Read and Considered In Their Entirety.* The charge given to the jury is to be read and considered in its entirety and an inaccurate expression should not be regarded as a ground for a reversal where it appears from the whole of the instruction that the jury could not have been misled by the inaccuracy. Following *The State v. Killion,* 95 Kan. 371, 148 Pac. 643.

4. SAME—*Other Specifications of Error Without Merit.* Other specifications of error examined and found to be without substantial merit.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed November 10, 1923. Affirmed.

*H. S. Hines,* of Arkansas City, and *Edward J. Fleming,* of Tulsa, Okla., for the appellant.

*C. B. Griffith,* attorney-general, *John F. Rhodes,* assistant attorney-general, and *C. H. Quier,* county attorney for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The defendant appeals from a conviction of maintaining a nuisance under the prohibitory liquor law. His principal specifications of error are, that the trial court erred in not sustaining

his plea in abatement, in overruling his motion for a directed verdict, in the giving of certain instructions, and refusal to give others.

The original complaint and warrant, on which defendant's preliminary examination was held, charged in the first count a former conviction and the felonious sale of intoxicating liquor. The second count charged a former conviction and the felonious keeping of a place for the unlawful sale and use of intoxicating liquor.

The record discloses that, at least one continuance was taken, pending defendant's preliminary hearing. An information was filed in the district court containing two counts, as in the original complaint and warrant. To this information the defendant filed a plea in abatement, to which the county attorney filed a general denial. On the hearing of the plea in abatement, the transcript of the justice's docket was introduced in evidence. It contained this entry:

"September 9, 1921. The court on hearing testimony of witnesses and being advised of the premises, I do find that a crime has been committed and that there is probable cause for believing that the defendant, John Wellman, is guilty of its commission."

The district court sustained the plea as to the first count and overruled it as to the second, and in that condition the case went to trial.

The evidence showed that in the month of July, 1921, defendant's home was searched by two officers under a search and seizure warrant. They found six or seven cases of twenty-four small bottles to the case, of what is commonly known as "home brew" beer. The defendant requested that one of the bottles be taken to a chemist for analysis. This was done, the analysis showing that it contained 5.6 per cent alcohol by volume. The defendant paid to have the analysis made. In addition to the cases of "home brew" the officers also found two quart bottles, which, according to a fire test, contained alcohol, commonly called "corn whiskey." They also found a can of malt and a package of hops; also a large quantity of new tops for bottles, which had never been used, and some half dozen empty cases. Also a number of empty bottles. At the time of their search, they found two strangers at the house; saw them pour out "home brew" and drink it. Another witness testified that he had, at various times, procured home brew at the home of the defendant; that it was in small bottles like the ones above mentioned; that he bought it there three or four times and drank it there; that he bought it from the defendant; that once or twice he had seen other

The State v. Wellman.

people drink there—drink the same stuff that he had drunk; that he paid twenty-five cents a bottle for the liquor.  An iceman testified, that on delivering ice at defendant's house, he got liquor out of the icebox; that he saw defendant drink it and defendant called it "home brew beer"; that there were usually five or six bottles in the ice box; that he never drank enough to intoxicate him, as he never drank more than one bottle at a time.  Another iceman testified that he got liquor out of the ice box whenever he wanted a bottle to drink and that he got it there something like half a dozen times; that he guessed it was home brew; that he never drank but one bottle at a time.

1.  The defendant contends that the transcript of the examining magistrate was insufficient, as a basis for the filing of the information, and that the trial court erred in denying his plea in abatement.  He stresses the point that there were two counts in the original complaint and warrant, and inasmuch as the examining magistrate found that there was probable cause for believing that a crime had been committed, and that defendant was guilty of "its" commission, that defendant did not know, and the court was unable to say which crime had been committed; whether that mentioned in the first or the second count.  The defendant's contention is based upon remarkably narrow ground.  The validity of his preliminary examination as to whether he was sufficiently advised of the charge against him depended not only upon the testimony adduced at such trial, but also upon other matters of procedure, including the complaint and the warrant.  One continuance was had during the time the matter was pending before the examining magistrate.  The recognizance on continuance stating that the defendant should appear "then and there to answer the charge of violation of the liquor laws, two counts pending against him."  Following his examination, the commitment stated that, "Whereas, it appears that the offense of violating the prohibitory liquor law has been committed and that there is probable cause to believe that the defendant John Wellman is guilty of the commission, etc."

Several of the same witnesses who testified at the trial in the district court had also testified at the preliminary examination.  They testified on behalf of the state and were cross-examined by the attorney for the defendant.  All of these matters taken into consideration, abundantly support the claim of the state that the defendant had a legal and sufficient preliminary examination and was

fully advised of the charge against him. If the examining magistrate, from the evidence at the preliminary, and the record in the case, found that there were reasonable grounds for believing that a crime, as set out in the second count of the original complaint and warrant, had been committed, it is fair to presume that this was the crime referred to in his entry: "that there is probable cause for believing that the defendant John Wellman is guilty of its commission."

In *The State v. Killion,* 95 Kan. 371, 148 Pac. 643, it was said:

"The validity of preliminary examination, and whether defendant has been sufficiently advised as to the charge upon which he is to be tried, depends upon the complaint, the warrant and the evidence developed at the preliminary examination, and not alone upon the statements contained in the warrant." (syl. ¶ 1.)

In *The State v. Demming,* 79 Kan. 526, 100 Pac. 285, it was said:

"It is not sufficient ground for a plea in abatement that the docket of the justice of the peace, before whom a preliminary examination was held, shows merely a finding that a crime has been committed (its character not being stated) of which there is probable cause to believe the defendant guilty, and an order that he be held to answer the charge as filed against him in the district court, where the information charges the same offense as that described in the warrant." (syl. ¶ 4.)

In *The State v. Tennison,* 39 Kan. 726, 731, 18 Pac. 948, it was said:

"To bind over the accused, it must appear to the justice that an offense has been committed, and that there is probable cause to believe the defendant guilty. The record made by the justice should show the existence of these conditions, but it is not required that the exact language of the statute should be employed in making the entry. In the present case there is a general finding made by the justice that 'there is sufficient evidence to warrant the binding over of the defendant.' In the order of commitment issued, and which is made a part of the record, the justice recites that, 'It appears that the offense of murder has been committed, and that there is probable cause to believe that Lucy Tennison is guilty of the commission thereof.' Taking the two entries together, there can be no question of what the findings are, and that there has been a substantial compliance with the requirements of the statute." (See, also, *The State v. Bailey,* 32 Kan. 83, 3 Pac. 769; *The State v. Fields,* 70 Kan. 391, 78 Pac. 833.)

2. The defendant contends that the evidence was wholly insufficient to show that the defendant committed the offense of keeping a place as charged in the second count. The conclusive character of the evidence heretofore briefly reviewed requires no further dis-

cussion. There was ample evidence to warrant submission of the case to the jury and to sustain their verdict.

3. The defendant requested the court to instruct the jury that the mere possession of intoxicating liquors in the dwelling of the defendant would not, of itself, be sufficient to constitute his home a nuisance. Under all the circumstances, it was not error for the court to refuse the instructions requested, and while the instructions given can not, in all respects, be approved, it can not be said that they misled the jury, or otherwise prejudiced the defendant. What has heretofore been said in other cases has pertinent application here.

In *Ft. Scott v. Dunkerton,* 78 Kan. 189, 96 Pac. 50, it was said:

"In a charge of keeping and maintaining a nuisance it is not necessary to include the negative averment that the place kept and maintained is not a dwelling-house." (syl. ¶ 4.)

In *The State v. Penquite,* 86 Kan. 970, 971, 122 Pac. 894, it was said:

"The evidence showed that the defendant conducted the unlawful business at his residence. This fact did not entitle him to an instruction that if the place complained of was his residence the jury must acquit him of the offense of keeping a nuisance, because a nuisance can be maintained in a residence as well as in a place of business. The mere possession of intoxicating liquors can not be relied upon as *prima facie* evidence of their being kept for unlawful use, when the place in which they are kept is a dwelling house. The state, in this case, did not rely upon the prima facie effect of finding the defendant in the possession of intoxicating liquors under section 4396 of the General Statutes of 1909. It proved that he kept them at his residence for the purpose of selling them contrary to law. We find no error in the record, and the judgment is affirmed."

. In *The State v. Adams,* 89 Kan. 674, 677, 132 Pac. 171, it was said:

"The state did not rely for a conviction upon the mere finding of intoxicating liquor in the defendant's dwelling house and he was not entitled to an instruction, which he requested, segregating that single fact from all others and declaring its evidential value. While the finding of intoxicating liquor in the possession of a defendant in his dwelling house may not, standing alone, warrant an inference that such liquors are kept for unlawful purposes, in almost every case the finding occurs under conditions inseparably attending it by which the possession must be interpreted."

In *The State v. Killion,* supra, it was said:

"The charge given to the jury is to be read and considered in its entirety, and an inaccurate expression should not be regarded as a ground for reversal

where it appears from the whole of the instructions that the jury could not have been misled by the inaccuracy." (Syl. ¶ 6; see, also, *The State v. Atterberry*, 59 Kan. 237, 52 Pac. 451; *The State v. Pugh*, ⸢ 5 Kan. 792, 90 Pac. 242.)

We have considered the other specifications of error relied on by the defendant and find nothing that would warrant a reversal of the case. The judgment is affirmed.