No. 33,116

THE STATE OF KANSAS, *Appellee* and *Cross-appellant*, v. JOHN F. MILLHAUBT, *Appellant*.

(61 P. 2d 1356)

Opinion filed November 7, 1936.

*H. C. Castor* and *Jesse D. Wall,* both of Wichita, for the appellant.

*Clarence V. Beck,* attorney general, *J. S. Parker,* assistant attorney general, *Sidney L. Foulston,* county attorney, and *Patrick J. Warnick,* deputy county attorney, for the appellee and cross-appellant.

The opinion of the court was delivered by

THIELE, J.: Defendant, who was a county commissioner of Sedgwick county, appeals from a conviction for violation of R. S. 19-242. Although many errors are specified, in his brief appellant combines them and presents them under six divisions which will be noticed in the order presented. A cross-appeal by the state will also be discussed.

1. It is contended that the statute under which the prosecution was had is unconstitutional. This question was raised in the trial court by a motion to quash the indictment found by the grand jury. It was presented to this court on a previous appeal and decided adversely to appellant's contention. (*State v. Rogers,* 142 Kan. 841, 52 P. 2d 1185.) We adhere to what is there stated and will not treat the matter further. In our judgment, the statute under which the prosecution was had is not unconstitutional.

2. It is next argued the grand jury returning the indictment was a void grand jury and the indictment found by it was void. The basis for this contention arises out of facts concerning which there is little dispute. The grand jury was drawn by the judge of division No. 3 of the Sedgwick county district court. He first drew from the jury wheel the names of fifteen jurors whose names were duly listed and numbered consecutively 1 to 15 by the jury clerk. These names were duly certified as being drawn from the jury wheel to serve as grand jurors. He then handed the jury clerk a list of six, or perhaps seven, names of his own selection and directed her to list them, num-

bering them 16, etc. Then additional names were drawn from the jury wheel and listed until a total of 25 more names were listed, and these were all certified as talesmen to fill places of any grand juror who might fail to attend or be discharged. When the grand jury was impaneled, it was made up of eight persons originally drawn as grand jurors, six persons whose names were on the list produced by the district judge, and one person whose name was among those drawn from the jury box to act as talesmen. It is not contended that any of the grand jurors in the original list appeared, were not properly discharged and should have served on the grand jury as finally impaneled, but did not do so. By plea in abatement, defendant raised the question of the legality of the grand jury finding the indictment. The state's demurrer to this plea was sustained, the trial court finding there was no irregularity or corruption in the manner in which the grand jury was selected. In the first appeal, defendant attempted to present the contention now before us, but we held that an appeal did not lie from the order sustaining the demurrer until after trial and final judgment. (See *State v. Rogers,* supra.) The matter is now open for consideration.

Appellant's contention may be divided into two divisions. The first is that the district judge in drawing the list of prospective grand jurors had no legal right to draw names of talesmen until the panel of grand jurors had been exhausted. The second is that in no event did he have the right to have listed any names of his own selection not drawn from the jury box. In support of his contention appellant relies on *State v. Jenkins,* 32 Kan. 477, 4 Pac. 809, and *State v. Edwards,* 64 Kan. 455, 67 Pac. 834, and decisions from other jurisdictions. Both of the Kansas cases pertain to the selection of a trial or petit jury.

The criminal code provides that upon proper proceedings being had the district judge shall order a grand jury to be drawn and summoned in the same manner as petit jurors for the district court (R. S. 62-902); that fifteen grand jurors shall be summoned and sworn from the persons summoned to serve as grand jurors and appearing, and in case any grand juror fails to attend or is discharged, his place shall be filled by a talesman to be selected by the judge (R. S. 62-904).

The statutes with reference to qualification and selection of jurors generally provide for the drawing of fifteen persons to act as grand jurors and twelve persons to act as petit jurors (R. S. 43-107), but

the district judge may order additional petit jurors to be drawn (R. S. 1933 Supp. 43-120). Sedgwick county has over 100,000 population, hence is governed by R. S. 43-135 to R. S. 43-150, inclusive, the provisions of which refer solely to petit jurors. Under the last-mentioned statutes, a different method of making up the jury list obtains (compare R. S. 43-101 to 43-106, inclusive, with R. S. 43-136), but that feature is not involved in our case and will not be discussed. The names of those eligible for jury duty are written on cards and placed in a jury wheel or box. The district judge may order, from the jury wheel or box, a sufficient number of cards to constitute a panel or any part thereof (R. S. 43-138). When the jury for trial cannot be made up from the combined panel, the judge may direct the sheriff to summon a sufficient number of qualified persons from the bystanders "or the court may make a list of persons having qualifications of jurors and the sheriff shall summon such jurors so ordered by said court," provision being also made that in case either party request, the court shall draw or cause to be drawn from the jury wheel or box, a sufficient list to complete the panel (R. S. 43-139). It thus appears that unless a party demands a further drawing from the jury wheel, the court may select additional talesmen from whom the full jury may be obtained. It likewise seems evident that such a provision can be of no effect where a grand jury is being impaneled for the reason there is no party appearing. The provisions of R. S. 62-907 for objections to competency do not apply here. From the above it appears there is no specific provision for an original summoning of more than fifteen grand jurors. Following appellant's argument, were only that number summoned, upon impaneling a grand jury, if any failed to appear, then a recess would have to occur while a further drawing and summoning could take place, or, under the statutes with reference to petit jurors—and the same provision is found in the general statute (R. S. 43-123) and the statutes with reference to counties of over 90,000 population (R. S. 43-139)—the court could make its list. In both cases the method of filling the panel is stated in the alternative. In *State v. Junkins,* supra, relied on by appellant, the entire list from which the jury was drawn was selected in such manner as to constitute a substantial departure from the statutory mode, the challenge was to the entire array, and this court held it should have been sustained. In *State v. Edwards,* supra, also relied on by appellant, after the regular panel was exhausted, defendant de-

manded the drawing of additional names from the jury box, as the statute provided. We need not notice the reasons why his request was not allowed. In both of the above cases there was a failure to observe specific rights of the defendant. In the case before us no such situation obtained. At most, the providing for talesmen before the duly selected panel was exhausted constituted an irregularity. It is not claimed there was actual corruption, only that the situation constituted legal corruption.

Under R. S. 62-904, when any juror of the grand jury panel fails to appear or is discharged, his place shall be filled by a talesman to be selected by the judge. To all intents and purposes that was done in the instant case. Assuming there was any irregularity, it did not amount to corruption. In view of the want of a specific statutory provision for the drawing of talesmen for a grand jury, it might have been better that the regular panel of fifteen summoned be exhausted either by failure of one or more to appear or by discharge of some who did appear, before selecting talesmen under either method provided by the statute. But from a careful search of the record, especially in view of the ruling of the trial court—the judge of which was not the judge ordering and drawing the grand jury—that the plea in abatement was not well taken, we are constrained to hold there was no irregularity which amounted to corruption. Under R. S. 62-909 the plea in abatement was not good and the trial court properly sustained the demurrer to it.

3. Appellant contends he was not given a full opportunity for a fair and impartial trial. The indictment found by the grand jury charged the appellant and the other members of the board of county commissioners jointly. Appellant contends his motion for a separate trial should have been allowed. As he was charged with a misdemeanor, his motion for a separate trial was addressed to the discretion of the trial court. (R. S. 62-1429.) He also complains that his motion for permission to inspect the transcript of proceedings before the grand jury was denied. His argument is that the transcript would have assisted him in preparation of his defense. It may be said that the proceedings before the grand jury were not admissible in evidence against him and no attempt to use them was made. Assuming that such a motion should ever be allowed, its denial here is not shown to have interfered in any manner with appellant's presenting his defense. He further complains because the trial court overruled his motion for a bill of par-

ticulars. In *State v. Miller*, 90 Kan. 230, 133 Pac. 878, the right to have such a bill was under consideration, the court reviewed the authorities and held that the matter of requiring a bill of particulars was discretionary and it was not error to refuse such bill when abuse of discretion was not shown. We have reviewed the motion as to the count on which conviction was had. In part it seeks to have the state plead its evidence, in part to commit itself as to the validity or invalidity of the contract between Haun and Sedgwick county, and in another part argues the constitutionality of the statute under which defendant was charged. Although appellant presents authorities that a bill of particulars should be required in certain instances, there is no showing, even hardly a claim, that the refusal to require one prejudiced him in any manner. All the rulings complained of under this heading arise from matters discretionary with the trial court and will be reviewed by us only where abuse of discretion is shown. There is lack of such showing or of anything that would show appellant's rights had in any manner been prejudiced.

4. It is contended there was not competent evidence sufficient to sustain the judgment and that the judgment is contrary to the evidence. The second count of the indictment, upon which conviction was had, charged that Millhaubt, with the two other members of the board of county commissioners, did unlawfully, etc., allow a greater sum on an account, claim or demand against the county than the amount actually due thereon, dollar for dollar, according to ordinary compensation. The statement of account showed a claim for legal services and printing $100,000 poor-emergency bonds in the amount of $1,500. The state's evidence showed the allowance of the account. Various witnesses qualified and showed the usual charge for legal services in bond matters. Testimony was also offered showing the actual charge for printing the particular bonds in question, from all of which the jury could have found that such cost was as little as $269.90, and that therefore the defendant and his fellow members on the board, in allowing and paying $1,500, allowed a greater sum on the account than the amount actually due thereon, according to ordinary compensation. Defendant's evidence tended to prove the contrary.

It is urged the evidence failed to prove there was any ordinary compensation for such legal services and printing. It is also urged that in any event the items concerning which testimony was taken

covered only the actual cost and did not cover the ordinary charge for the completed services; that an ordinary charge cannot be proved by taking account of separate items and omitting other items. We pause here to call attention to a contract made January 17, 1934, with Haun & Company, by the board of county commissioners in which the company was to assist the county in refunding certain outstanding bonded indebtedness. Under this contract, Haun & Company were to print the bonds and furnish services of attorneys for a sum equal to fifteen dollars per thousand and were also to receive twenty dollars per thousand on each bond exchanged. At some time not clear the following clause was written into that part of the contract specifying the rate of payment, "this is to include all bonds issued in 1934." The admission in evidence of this contract, and certain instructions of the court pertaining to it, are the basis of a part of the state's cross-appeal and will be referred to later. Early in the trial there was indication the defendant would stand on this contract as fixing a basis of payment of the account. It is now conceded the contract did not refer to the poor-emergency bonds, but it is argued that additional services were contemplated and to be rendered and that such additional services were rendered; that Haun was entitled to payment as on *quantum meruit*, and considering such services as additional to the itemized cost of legal services and printing expense, there was failure to prove the allowance made exceeded the usual and ordinary cost of the entire work. If it be assumed the county commissioners could delegate to a third person their duties with respect to the issuance of poor-relief bonds, what was there to do except to follow the necessary legal steps and print the bonds and sell them? It is urged that by reason of Haun's activities the bonds sold for a premium of thirty-one dollars per thousand and that the county, after paying Haun, had a net gain of sixteen dollars per thousand. The answer to this argument may be the interest rate was made attractively high in order to accomplish just such a result. In any event, it does not prove that the contract, if there was one, contemplated any more than the account stated—legal services and printing of bonds. Our examination of the evidence as abstracted convinces us that there was competent evidence sufficient to sustain the judgment.

5. It is next argued that the court gave erroneous and prejudicial instructions. Two instructions are mentioned.

In one instruction the court advised the jury that if they believed the defendants allowed the claim with intent to allow a greater sum, etc.—

"Then you are instructed that the defendant or defendants who allowed said accounts, or either of them, with the intention aforesaid, intended to violate the said statute, as to the account or accounts that were allowed with said intention, you will find such defendant guilty, notwithstanding that the defendant or defendants might have been mistaken as to what constituted ordinary compensation or price for services rendered or materials furnished to said county."

It is contended the instruction contradicted itself and that it deprived appellant of his defense that if there was ordinary compensation or if the allowance was in excess of ordinary compensation, before he could be convicted the state must show that he knew it to be excessive. We do not believe the instruction contradictory. It advised the jury that if it believed the defendants allowed the account with intent to allow a greater sum than actually due according to ordinary compensation, then they intended to violate the statute notwithstanding they might have been mistaken as to what constituted ordinary compensation. It did not take away the state's duty to show the excessive allowance; that was covered by other instructions of which no complaint is made. The statute under which appellant was prosecuted did not make specific intent an essential element of the offense of which he was convicted. Where the statute defines the duties of a county officer and specifies acts he shall not do, if he intentionally does certain of those acts, and their being done is prohibited, he intentionally violates the law. (See *Emporia v. Becker,* 76 Kan. 181, 90 Pac. 798; *Ellis v. United States,* 206 U. S. 246, 27 S. Ct. 600, 51 L. Ed. 1047, and 46 C. J. 1049.)

The second instruction complained of arose out of the following situation: Reference has been made to the contract between Haun & Company and the defendant commissioners. The contract was received in evidence over objection of the state, and in instruction 14 the jury were advised that the contract contemplated services by Haun & Company to be paid at thirty-five dollars per thousand of bonds, and the fact that the contract itemized the services by specifying fifteen dollars per thousand for legal services and printing and twenty dollars per thousand for each bond exchanged did not make the contract divisible. It is here noted that the state objected to the contract's being received in evidence and to the giving of the instruction, and reserved the questions for appeal and has ap-

pealed from the ruling and instruction. This cross-appeal will be discussed in connection with the defendants' contention here noted.

After the jury had deliberated for some time, it sent a written communication to the trial court stating it was in doubt as to the interpretation of instruction 14. The trial court then gave a further written instruction which recited the contentions of the state and defendants. As to this part, defendant does not complain, but he urges that the concluding portion, reading—

"And, if you find from all the evidence, that these contentions are true, you will find the defendant or defendants, whom you find did not intend an allowance of the claim, but did intend an adjustment with Haun as claimed, not guilty under the second count of the indictment. You are to consider the instructions herein given in connection with and in the light of, all the other instructions heretofore given in this case,"

in effect put the burden of proof on him.

It may here be said the appellant did not rely on the contract as a defense; in fact he could not, for by its terms it did not cover the poor-emergency bonds. The contract referred to covered refunding bonds. If any contract was admissible in evidence to prove rate of pay for services rendered, it was not the contract offered and received, and the trial court erred in admitting it. It follows that it erred in instructing the jury concerning it. But did this error prejudice the appellant? We think that on this phase of the matter he cannot complain, for he offered the contract, did not object to instruction No. 14, and has not specified as error its being given.

Did the court's explanatory instruction put any burden on the appellant? It has been held repeatedly by this court that instructions must be considered in their entirety; that all of the law cannot be given in one instruction, and that single sentences and clauses of an instruction must be read in connection with the whole. (*State v. Wellman,* 114 Kan. 671, 220 Pac. 271; *State v. Ollman,* 114 Kan. 697, 219 Pac. 963; *State v. Stewardson,* 121 Kan. 514, 247 Pac. 429; *State v. Gardner,* 126 Kan. 803, 271 Pac. 280; *State v. Sweetin,* 134 Kan. 663, 8 P. 2d 397, and cases cited.) Taking all of the instructions, it clearly appears the trial court advised the jury fully with respect to the burden of proof. When the court, in the supplementary instruction, advised the jury that if they believed the defendant's contention they should find him not guilty, it did not have the effect of putting the burden of proof on him; it merely told the jury that if his contention were correct he should be acquitted, and that it was not intended to and did not shift the burden of proof is evident,

from the last sentence, which specifically advised the jury they were to consider the instruction in connection with and in the light of the other instructions. This instruction is thus to be distinguished from that condemned in *Minner v. United States*, 57 F. 2d 506, relied on by appellant. If there was error in the instruction, it grew out of the wrongful admission of evidence favorable to the appellant and invited instruction 14, the statements of which caused the jury to seek further light. As we view all of the circumstances leading up to the giving of the portion of the instruction complained of, and the giving of it, the trial court did not commit any error prejudicial to the appellant.

6. Appellant contends that the juror Wolf was guilty of gross misconduct. On his *voir dire* examination, Wolf stated he had heard and read of the case, but had no opinion of the guilt or innocence of the defendant; that he had met defendant Millhaubt; that there was nothing in his acquaintance that would affect him in the trial; that he did not know defendants Rogers and Hill; that he knew of no reason why he could not sit as a fair and impartial juror. After being examined by defendant's counsel, he was passed for cause and ultimately became one of the impaneled jury. On motion for a new trial, witnesses testified that after the verdict was returned, Wolf had said that the crooks, referring to the defendants, got what was coming to them, or words to that general effect. One witness expanded Wolf's statement as including that anyone who read the newspapers knew they were guilty. Another witness, who had been a juror, was permitted to say that Wolf had said in the jury room that Rogers didn't have a very good name in his neighborhood. Another juror gave her version of what Wolf said which to an extent contradicted what the first one had said. Wolf was examined about the whole matter, denied some of the statements attributed to him and stated that sometime after the verdict was returned, in a general conversation he had said, "I suppose they got what was coming to them." The trial court, after hearing all of this testimony, denied the motion for a new trial on this, as well as the other grounds urged. We shall not discuss whether or not the testimony admitted in evidence was in part incompetent as an attempt to impeach the verdict, nor which witness was to be believed. The latter was the function of the trial court, and by its ruling it found there was no bias on Wolf's part nor any corruption. That must end the matter. After a jury has been discharged it may be

indiscreet for one of the jurors to express an opinion that a defendant is guilty, but if the verdict was to that effect at least his statement was consistent, and did not prove bias, prejudice or corruption.

7. And, finally, appellant complains that his motion for a new trial was denied. So far as the record shows, the matters above discussed were the basis of his motion. It has not been made to appear that the trial court erred in denying the motion for a new trial.

8. We now take up that part of the state's cross-appeal which was not involved in the discussion of the defendant's appeal. The state has filed a brief in connection with the cross-appeal in which, by reference, it makes a part thereof its brief filed in *State, ex rel., v. Rogers,* No. 33,113, and *State, ex rel., v. Millhaubt,* No. 33,114, now pending in this court, both being quo warranto proceedings to oust the two defendants from office. The defendant has filed no brief on the cross-appeal, but we have considered his brief filed in the above actions.

After the verdict of guilty was returned and the various motions in arrest of judgment and for a new trial were denied, the defendant was arraigned for sentence. The state contended that as a part thereof the trial court should remove him from office as provided by R. S. 19-243. The trial court imposed a fine and certain costs and made its order that defendant be not removed or ousted from his office as county commissioner of Sedgwick county by reason of or on account of the verdict of guilty, or the sentence or judgment of the court. The state reserved the question, duly appealed, and assigns the ruling as error.

Defendant was prosecuted and convicted of a violation of R. S. 19-242. The penalty for such violation is prescribed in R. S. 19-243, which reads, in part:

"Any . . . county commissioner . . . who shall violate any of the provisions of this act . . . shall be deemed guilty of a misdemeanor, and upon conviction thereof . . . shall be subject to a fine of not less than ten dollars, nor more than ten thousand dollars, *and shall, moreover, be removed from office.*" (Italics inserted.)

There have been a considerable number of cases in the nature of quo warranto seeking to remove officers for misconduct in office, in which it has been held that the acts complained of must have been willfully and intentionally done. Among these are *State, ex rel., v. Scates,* 43 Kan. 330, 23 Pac. 479; *State v. Trinkle,* 70 Kan. 396, 78 Pac. 854; *State, ex rel., v. Foley,* 107 Kan. 608, 193 Pac. 361; *State,*

*ex rel., v. Wilson,* 108 Kan. 641, 196 Pac. 758; *State, ex rel., v. Duncan,* 134 Kan. 85, 4 P. 2d 443. The instant case, however, is a criminal proceeding, and, as has been shown heretofore, the state need not show willful and intentional misconduct on the part of the defendant as an element necessary to prove violation of the statute under which he was charged. It appears, however, that the offense committed by Millhaubt occurred in a previous term, and the principal question is whether, on being convicted during a second term for offenses committed during his first term, his sentence should have included removal from office.

In *State, ex rel., v. Henschel,* 103 Kan. 511, 175 Pac. 393, which was an action in quo warranto, it was held that a public officer who is convicted of willful misconduct in office forfeits his right to hold office for the term of his election, but the disqualification does not extend beyond the term in which his official delinquency occurred. This holding was adhered to in *State, ex rel., v. Hurley,* 116 Kan. 395, 226 Pac. 709, and *State, ex rel., v. Jackson,* 139 Kan. 744, 33 P. 2d 118, both of which were quo warranto actions. In the Henschel case it was said:

"This action was begun on May 22, 1917—to forfeit defendant's right to the office for a term which had then expired. The defendant's dereliction in one term does not disqualify him from holding the office in a succeeding term. There is no general disqualification in the ouster law barring official delinquents from holding office in any term beginning in the future, and the court cannot write such language into the statute. There seems to be no escape from this conclusion; the alleged official misconduct had become a moot question ere ouster proceedings were begun;" (p. 512).

*State v. Rose,* 74 Kan. 262, 86 Pac. 296, involved the effect of defendant's reëlection at a special election to fill the vacancy caused by his removal under an action in quo warranto, it being contended that Rose was being deprived of his office without due process of law. This court said:

"The contention that to deprive the defendant of the right to hold the office for the remainder of the term is to take away a right from him without due process of law is not well founded. He is only made to suffer the penalty imposed for misconduct in office and violation of law. The office is created by statute. The grounds of forfeiture are prescribed by statute, and the statute provides the method by which the forfeiture is declared. The defendant has no vested right to the office, and especially none which may not be forfeited and lost by misfeasance. Having violated the statute, he must suffer the penalty which the statute prescribes." (p. 271.)

While it has been held generally that removal of an officer under

proceedings in the nature of quo warranto is limited to the term during which the offense is committed, and that he cannot be removed during a present term for offenses committed during a previous term, there are many decisions to the contrary, due in part to statutory provisions. (See 22 R. C. L. 568, 570, 46 C. J. 986, and the annotation on removal of public officer for misconduct during previous term, 17 A. L. R. 279.) How persuasive are such conclusions and holdings where the removal is a part of a sentence in a direct criminal proceeding?

In *State v. Pierce*, 52 Kan. 521, 35 Pac. 19, county commissioners were prosecuted for violation of the identical statute now under consideration, and convicted, but no judgment removing them from office was rendered. The action was commenced and tried during the term for which Pierce was elected. The question of removal was not an issue, but in the opinion appears the following:

"In *The State, ex rel., v. Scates,* 43 Kan. 330, Mr. Justice Valentine, concurring in the prevailing opinion, observed: 'If the members of the board had been prosecuted under section 3 of the act to restrain the issuing of county warrants, and found guilty, they would and should, in my opinion, have been removed from office.'" (p. 527.)

The Scates case has been referred to in an earlier part of this opinion.

In determining the extent of removal under R. S. 19-243, we note the following: Article 9, section 5 of our constitution provides that "All county and township officers may be removed from office, in such manner and for such cause, as shall be prescribed by law." An act for removal of unfaithful officers was passed in 1911, and now appears as R. S. 60-1609. Reference has been made to cases in quo warranto arising under it, all of which were civil in nature. In the statutes with reference to county officers, it is provided that a county office shall become vacant on the happening of certain events, *before the expiration of the term of such office,* including—

"Third, his removal; . . . fifth, his conviction of an infamous crime or any offense involving a violation of his official oath." (R. S. 19-2608.)

From the above, it is clear that under our statutes and decisions, removal under civil proceedings is limited to offenses occurring in the present and not previous terms of office.

In our criminal code, R. S. 21-809, it is provided that every officer duly convicted of bribery and related offenses, oppression,

partiality, misconduct or abuse of authority in his official capacity, or of official fraud, shall, in addition to the specified punishment, "*be forever disqualified from holding any office of honor, trust or profit,*" etc.. And in R. S. 21-813 it is provided:

"Every officer who shall be convicted of any official misdemeanor or misconduct in office, or who shall be convicted of any offense which by this or any other statute is punishable by disqualification to hold office, shall, in addition to the other punishments prescribed for such offenses, forfeit his office."

It appears that had the prosecution occurred under the criminal statute first mentioned, there could be no question as to when the offense occurred, and that where the second was applied, under its language there could be little doubt that removal must follow regardless of terms of office.

Perhaps there is good ground for making a distinction between civil actions for removal, and removal as a necessary consequence of conviction in a criminal action, insofar as the time the alleged misconduct occurred is concerned. In the civil action, the proof would only show misconduct by preponderance of proof; in the criminal action, the defendant would be found guilty beyond a reasonable doubt. In the civil action, the primary purpose is removal from office; in the criminal action it is only a consequence following conviction of a violation of the criminal code. It is not contended that because the term of office in which the offense was committed has expired, no criminal prosecution can be maintained. It would seem to follow that had the action been only to remove defendant from his office, a judgment could not be effective after the term, but where expiration of the term does not prevent prosecution under the criminal law, upon conviction being had, the punishment must be that pronounced by the statute.

The statute under which the defendant was prosecuted has been quoted above. It will be noted that the punishment provided is stated in the conjunctive, and that insofar as removal from office is concerned there are no exceptions. The statute under which the defendant was convicted is criminal in its nature and is to be strictly . construed; but that does not warrant this court in writing into it an exception not contained therein, nor indicated by other statutes of similar nature. We are of opinion the legislature intended that a convicted officer should not continue to hold his office, and that a defendant convicted under it should be removed from his office whether the offense occurred during his present or a previous term

of office. The trial court erred in not including in its judgment the removal of defendant from his office.

Insofar as the appeal of defendant is concerned, the judgment of conviction is affirmed. Insofar as the appeal of the state is concerned, the judgment is reversed and the cause remanded with instructions to the trial court to resentence the defendant and to include in such sentence the removal of defendant from his office as county commissioner of Sedgwick county.

HUTCHISON, J., dissents from paragraph 8 of the syllabus and the corresponding part of the opinion.